No. 117,704

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DANIEL L. CALHOUN,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

Appellate courts exercise de novo review when considering trial courts' denial of a K.S.A. 60-1507 motion based on the motion, files, and record of the case following a preliminary hearing. This is because appellate courts are in the same position to rule on the merits of the case as trial courts. For this same reason, if the motion, files, and record of the case establish that a K.S.A. 60-1507 movant has been prejudiced by counsel's ineffectiveness, appellate courts may reverse a defendant's unconstitutional conviction without first remanding for an evidentiary hearing on the movant's K.S.A. 60-1507 motion.

2.

In *State v. Overstreet*, 288 Kan. 1, 13, 200 P.3d 427 (2009), our Kansas Supreme Court held that a defendant must have the same specific intent to commit the crime as the principal for the defendant to be convicted of a specific intent crime under a theory of aiding and abetting.

1

3.

When a defendant is charged with specific intent crimes under a theory of aiding and abetting, a jury should be given the aiding and abetting same mental culpability instruction, but not the aiding and abetting foreseeability instruction. If the defendant is charged with both specific intent and general intent crimes, the trial court must instruct the jury that it can use an aiding and abetting foreseeability instruction only when considering if the defendant is guilty of general intent crimes.

4.

In this case, the movant's trial counsel provided ineffective assistance of counsel by failing to object to the aiding and abetting jury instruction that told the jury it could convict him of specific intent crimes if it found that the specific intent crimes were a reasonably foreseeable consequence of his intended crime. The movant's appellate counsel also provided ineffective assistance of counsel by failing to raise this issue on direct appeal. Moreover, under the facts of this case, both trial counsel's and appellate counsel's performances resulted in prejudice to the movant as to movant's specific intent convictions of aggravated kidnapping, attempted voluntary manslaughter, and criminal threat.

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed July 27, 2018. Affirmed in part, reversed in part, and remanded.

*Kristen B. Patty*, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., GREEN and MCANANY, JJ.

GREEN, J.: Daniel L. Calhoun appeals the trial court's denial of his K.S.A. 60-1507 motion following a preliminary hearing. On appeal, Calhoun argues that the trial court's judgment denying his K.S.A. 60-1507 motion was erroneous. Calhoun contends that he was entitled to a new trial on his nine felony convictions based on trial errors, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel. Of Calhoun's many issues, we find only one has merit: that his trial and appellate counsel provided ineffective assistance that resulted in prejudice because they did not challenge the giving of an aiding and abetting foreseeability instruction. The giving of the aiding and abetting foreseeability instruction with specific intent crimes directly contradicts our Supreme Court's holding in *State v. Overstreet*, 288 Kan. 1, 12-13, 200 P.3d 427 (2009). Because the motion, files, and records of Calhoun's case show that Calhoun suffered prejudice based on his counsel's failures with regard to his aggravated kidnapping, attempted voluntary manslaughter, and criminal threat convictions, we reverse those convictions and remand for a new trial. Accordingly, we affirm in part, reverse in part, and remand.

*Calhoun's Underlying Criminal Case*

A jury convicted Calhoun of aggravated kidnapping, aggravated criminal sodomy, attempted voluntary manslaughter, aggravated burglary, criminal threat, two counts of aggravated robbery, and two counts of aggravated battery. Calhoun's attempted voluntary manslaughter conviction was the lesser included offense of attempted intentional second-degree murder. The jury also acquitted Calhoun of rape and three counts of aggravated criminal sodomy.

The trial court instructed the jury that they could convict Calhoun if they believed he was either the principal or an aider or abettor in the commission of the crimes. The aiding and abetting jury instruction included language that told the jury it could convict Calhoun of any of the crimes even if he was not the principal, so long as they believed

3

that the crimes were a "reasonably foreseeable" consequence of the intended crime. Calhoun's three accomplices in commission of the crimes were Christopher Thompson, Isaac Little, and M.D. M.D., who was a minor when he committed the crimes, became a State's witness.

The evidence at Calhoun's trial established that Calhoun, Thompson, Little, and M.D. broke into the house of Javier and his common-law wife, S.E.C., in the early morning hours of May 16, 2009; Javier and S.E.C.'s three young children were also at home during the break-in. Javier had opened the front door to his house because he heard loud knocking. When he opened the door, there was a man with a gun. During the terror that ensued that morning, the following happened.

One of the men, who was carrying a loaded gun, forced both Javier and S.E.C. to get on the floor on their knees and demanded that they give him their money. When Javier and S.E.C. told them that they had no money, the man then picked up Javier and S.E.C.'s nine-month-old son, threatening to kill their baby while pointing the gun at his head. At different points, the men repeatedly kicked Javier and stomped on his head. And, by the time the men had fled Javier and S.E.C.'s house, Javier had been shot multiple times, including in the left knee, the right knee, and twice in the chest. The men also sexually assaulted S.E.C. S.E.C. testified that she was vaginally raped once, anally sodomized once, and forced to perform oral sex three times. In addition, S.E.C. was physically beaten. At one point, the man with the gun forced the gun down S.E.C.'s throat, threatening to kill S.E.C. if she did not comply with his commands. In the end, the men left Javier and S.E.C.'s house after gathering what valuables they could find.

S.E.C. admitted it was difficult to identify the men. The men were wearing bandanas or shirts over their faces. Yet, S.E.C. consistently asserted that three of the men sexually assaulted her while the other man with the gun did not. S.E.C. identified Calhoun as one of the men that sexually assaulted her, although she also explained to a

4

detective that she was not "a hundred percent" certain who did what to her because she was not looking at them.

She also believed that the man who shot Javier was "in charge" since he was "giving orders to the other three people." S.E.C. testified that she heard one of the men yell "stop shooting" when she was being led from the garage to the bathroom, which was right before she saw the gunman shoot Javier three times. Javier alleged that the man with the gun stayed with him the entire time. He further alleged that this man was the man who threatened his infant son and the only man who shot him. He did, however, allege that Calhoun "stomped" on him after he started "fighting back" against the gunman.

Calhoun, who testified on his own behalf, admitted that he was at Javier and S.E.C.'s house with Thompson, Little, and M.D. Calhoun testified that he and the other men planned to rob Javier at his house because Javier sold marijuana from his garage. It is an undisputed fact that Javier had previously sold marijuana from out of his garage and had previously sold marijuana to Calhoun. Calhoun explained that when Thompson asked where he could buy some marijuana, he directed Thompson to Javier's house. Furthermore, on the way to Javier's house, they decided to rob Javier. Calhoun admitted that he participated in the robbery, entered into Javier and S.E.C.'s house, and collected any valuable items he could find.

Still, Calhoun denied committing any of the violent crimes against Javier, S.E.C., or the baby. He even asserted that he tried to prevent the other men from committing the violent crimes against Javier, S.E.C., and the baby. Calhoun asserted that Little was the only person with a gun and the only person who shot Javier. He alleged that at one point, when he came into the kitchen to find that Little had shot Javier, he tried to "physically stop [Little] from shootin[g]" and told Little "don't shoot [Javier] . . . he's already bleedin[g]."

5

M.D. testified that Calhoun was an active participant in the sexual assaults of S.E.C. He alleged that Calhoun told him to rape her, tied her hands up with a vacuum cord, and removed her clothing. M.D. testified that Calhoun punched Javier in the head when Javier somehow gained access to Little's gun. Nevertheless, M.D. testified that Little was the only one who shot Javier.

After his trial, Calhoun obtained new counsel. Calhoun then moved for a new trial, alleging that his jury engaged in misconduct and entered a compromised verdict on the aggravated criminal sodomy conviction. Calhoun's arguments were based on statements by a juror, B.R., who wrote a letter to the judge after his trial suggesting remorse for convicting him of aggravated criminal sodomy.

B.R. stated that during deliberations about half of the jury felt he was guilty of all the sex crimes and about half of the jury felt he was guilty of none of the sex crimes. She stated that the jury decided to acquit Calhoun of the rape and all but one of the aggravated criminal sodomies, despite understanding the aiding and abetting instruction requiring the jury to find him "guilty of all the crimes anyway simply because he was there," because (1) the jury did not want a hung verdict and (2) one juror had a planned trip the upcoming week. She explained that she finally agreed to find Calhoun guilty of a single count of aggravated criminal sodomy after "thinking of the law which [said] that [Calhoun was] guilty of all [the] crimes anyway simply because he was there." Eventually, another juror, D.M., came forward with a similar account of the jury deliberations. D.M. explained she ultimately agreed to find Calhoun guilty of the single aggravated criminal sodomy because her "take on the law [was] that, if you are [a willful] participant in the unlawful venture, whether you are the look-out or you're the guy who pulled the trigger; you're just as guilty of the [attempted] murder . . . that's it.

The trial court rejected Calhoun's new trial argument. The trial court compared Calhoun's case to *State v. Kaiser*, 260 Kan. 235, 249-52, 918 P.2d 629 (1996),

6

*disapproved on other grounds by State v. Gonzalez*, 282 Kan. 73, 145 P.3d 18 (2006), and relied on K.S.A. 60-441, which prohibits courts from considering the jury's mental process when reviewing the validity of a verdict. The trial court then sentenced Calhoun to a controlling prison term of 330 months followed by lifetime postrelease supervision. The trial court ran Calhoun's aggravated kidnapping and aggravated criminal sodomy sentences concurrent, but ran his remaining sentences consecutive. Calhoun appealed his convictions and sentences to this court.

*Calhoun's Direct Appeal*

On direct appeal, Calhoun made the following arguments: (1) that the trial court lacked subject matter jurisdiction because the State failed to charge him with aiding and abetting as a separate crime in the complaint; (2) that the aiding and abetting instruction created alternative means for committing crimes, meaning insufficient evidence supported all but his aggravated burglary convictions because he was not a principal actor in the commission of the other crimes; (3) that the trial court provided the jury with an erroneous definition of "sodomy" that created alternative means for the commission of the crime of aggravated criminal sodomy; (4) that the judge committed misconduct by calling S.E.C. a victim while explaining the jury instructions; (5) that the prosecutor committed misconduct during closing arguments by misstating the law; and (6) that cumulative error otherwise required the reversal of his convictions.

This court rejected each of Calhoun's arguments on the merits. *State v. Calhoun*, No. 107,116, 2013 WL 2991066 (Kan. App. 2013) (*Calhoun I*), *rev. denied* 299 Kan. 1271 (2014). After our Supreme Court denied Calhoun's petition for review, the mandate was issued on May 30, 2014.

*Calhoun's K.S.A. 60-1507 Motion*

On May 29, 2015, Calhoun filed a pro se K.S.A. 60-1507 motion with the trial court. In this motion, Calhoun argued that he was entitled to relief because of numerous trial errors, including: (1) that the trial court failed to properly instruct the jury on aiding and abetting; (2) that the trial court failed to properly instruct the jury on the role of hearsay evidence; (3) that the amended complaint charged him with simple kidnapping as opposed to aggravated kidnapping; (4) that his conviction for the crime of attempted voluntary manslaughter under a theory of aiding or abetting was a legal impossibility; (5) that his conviction for aggravated criminal sodomy was multiplicitous; (6) that his conviction for aggravated criminal sodomy was supported by insufficient evidence; (7) that his conviction for aggravated kidnapping was supported by insufficient evidence; (8) that his conviction for aggravated burglary was supported by insufficient evidence; and (9) that the prosecutor committed error several times.

Calhoun's primary complaint concerned the trial court's failure to instruct the jury that he must have had the same specific intent to commit the crime as the principal to be convicted of his specific intent crimes under a theory of aiding and abetting. Calhoun alleged our Supreme Court's decision in *Overstreet* directed this. Additionally, Calhoun asserted that both his trial counsel and appellate counsel were ineffective for failing to raise the preceding trial errors. Calhoun also asserted that his trial counsel was ineffective for failing to "stipulate to the uncontested facts (i.e. rape, sodomies, shooting, etc.)," locate witnesses to discuss Javier's drug business, and sequester certain State witnesses. Calhoun concluded by stating that "there [were] several other instances of ineffective assistance of counsel that [would] have to be added to this issue at the hearing on the motion."

On October 7, 2015, the trial court appointed counsel to represent Calhoun on his K.S.A. 60-1507 motion. On February 5, 2016, Calhoun's counsel filed a pretrial

8

questionnaire in which he merely incorporated Calhoun's pro se arguments by reference. Calhoun's counsel never filed a motion expounding on or clarifying Calhoun's arguments, which he made in his pro se K.S.A. 60-1507 motion.

On May 13, 2016, the State responded that the trial court should deny Calhoun's motion without holding an evidentiary hearing because the motion, files, and records of Calhoun's case definitively established that he was not entitled to relief. The State argued that to the extent that Calhoun was arguing about trial errors, he was barred from making such arguments in the context of his K.S.A. 60-1507 motion. As for his ineffective assistance of counsel arguments, the State provided an indepth analysis why each of Calhoun's arguments were legally incorrect, factually incorrect, or otherwise controlled by this court's decision in *Calhoun I*.

After the State's response, Calhoun moved to amend his K.S.A. 60-1507 motion "to add the claim that [a]ppellate [c]ounsel was ineffective for failing to raise the issue of juror misconduct and a 'compromise[d] verdict' in [his] direct appeal." Calhoun noted that in his original and timely K.S.A. 60-1507 motion he had stated that "'there [were] several other instances of ineffective assistance of counsel that [would] have to be added to this issue at the hearing on the motion.'" Calhoun asserted that his latest argument either "relate[d] back to the catch-all ineffective assistance argument" in Calhoun's K.S.A. 60-1507 motion or that the court should allow the amendment "to prevent manifest injustice."

The trial court held a preliminary hearing on Calhoun's motions, where Calhoun appeared through counsel, but not in person. In addition to repeating Calhoun's earlier arguments, counsel also asserted that the court should allow Calhoun to raise some of his trial error arguments based on exceptional circumstances. The State stood on its written motion in response to Calhoun's original K.S.A. 60-1507 motion, while also arguing that Calhoun had failed to establish he had a right to amend his K.S.A. 60-1507 motion either

9

because the amendment related back to his timely motion or because of manifest injustice.

The trial court ultimately denied Calhoun's motions. In rejecting Calhoun's argument that his amendment related back or was permissible because of manifest justice, the trial court noted that Calhoun had cited no authority to support his arguments. It also noted that it knew of no authority allowing a K.S.A. 60-1507 movant to "reserve the right to add something later." The court additionally rejected the argument that there were any exceptional circumstances in Calhoun's case requiring its consideration of Calhoun's other arguments. The trial court explained that it viewed the exceptional circumstances argument as an attempt to orally amend the motion, and it would not allow "any further amendment to the original motion." Concerning the arguments Calhoun raised in his timely K.S.A. 60-1507 motion, the trial court adopted the State's response in its entirety.

*Did the Trial Court Err by Denying Calhoun's K.S.A. 60-1507 Motion?*

*Applicable Law*

When the trial court denies a K.S.A. 60-1057 motion based upon the motion, files, and records of the case following a preliminary hearing, appellate courts are in the same position as the trial court to consider the merits of the K.S.A. 60-1507 motion; therefore, appellate courts exercise de novo review. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014).

To be entitled to an evidentiary hearing, a K.S.A. 60-1507 movant "'must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record.'" 300 Kan. at 1062 (quoting *Sola-Morales v. State*, 300 Kan. 875, Syl. ¶ 3, 335 P.3d 1162 [2014]). Once movants

10

meet this burden, they are entitled to an evidentiary hearing on the motion unless their motion is successive. *Grossman*, 300 Kan. at 1062.

K.S.A. 60-1507 provides:

"A prisoner in custody under sentence of a court of general jurisdiction claiming the right to be released upon the ground that the sentence was imposed in violation of the constitution or laws of the United States, or the constitution or laws of the state of Kansas, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may, pursuant to the time limitations imposed by subsection (f), move the court which imposed the sentence to vacate, set aside or correct the sentence."

Regarding trial errors raised within a K.S.A. 60-1507 motion, "[m]ere trial errors must be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal." Supreme Court Rule 183(c)(3) (2018 Kan. S. Ct. R. 224). This means that "[t]he judgment of an appellate court on a defendant's direct appeal is res judicata as to all issues actually raised. Absent exceptional circumstances, those issues that could have been presented, but were not, are waived." *State v. Barnes*, 37 Kan. App. 2d 136, Syl. ¶ 9, 149 P.3d 543 (2007).

Exceptional circumstances include the following:

"(1) ineffective assistance of trial counsel in failing to object regarding an issue; (2) ineffective assistance of direct appeal counsel in failing to raise the issue; or (3) newly discovered evidence or an unforeseeable change in circumstances or constitutional law unknown to counsel and the movant at the time of trial and direct appeal." *Bledsoe v. State*, 283 Kan. 81, 88-89, 150 P.3d 868 (2007).

11

To succeed on a K.S.A. 60-1507 claim of ineffective assistance of counsel, movants must establish (1) that counsel's performance was deficient under the totality of circumstances, and (2) that counsel's performance resulted in prejudice. *Sola-Morales*, 300 Kan. at 882 (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]). "Prejudice" means there was a reasonable probability that the outcome of the trial or appeal would have been different but for counsel's deficient performance. *Sola-Morales*, 300 Kan. at 882.

*Trial Errors Generally*

As he did below, Calhoun argues that he is entitled to relief under K.S.A. 60-1507 because of the following alleged trial errors: (1) because the trial court failed to properly instruct the jury on aiding and abetting; (2) because the trial court failed to properly instruct the jury on the role of hearsay evidence; (3) because the amended complaint charged him with simple kidnapping as opposed to aggravated kidnapping; (4) because his conviction for attempted voluntary manslaughter under a theory of aiding or abetting was a legal impossibility; (5) because his conviction for aggravated criminal sodomy was multiplicitous; (6) because his conviction for aggravated criminal sodomy was supported by insufficient evidence; (7) because his conviction for aggravated kidnapping was supported by insufficient evidence; (8) because his conviction for aggravated burglary was supported by insufficient evidence; and (9) because the prosecutor committed error multiple times. Calhoun has also alleged that the jury reached a compromised verdict and engaged in misconduct.

Yet, as previously noted, to be entitled to relief under K.S.A. 60-1507 for trial errors, exceptional circumstances must exist. Here, it is undisputed that Calhoun did not argue that exceptional circumstances existed to raise purely trial errors until his preliminary hearing, which was after the time to timely file a K.S.A. 60-1507 motion. At the preliminary hearing, when counsel argued on behalf of Calhoun that exceptional

12

circumstances existed, he did not explain what those exceptional circumstances were or why such arguments were allowed past the K.S.A. 60-1507(f) time limits. Accordingly, at the end of the hearing, the trial court correctly refused to consider the proposed oral amendment as untimely.

Moreover, to the extent that Calhoun's arguments concern only trial errors, his arguments were waived because they could have been raised in his direct appeal. See *Barnes*, 37 Kan. App. 2d 136, Syl. ¶ 9. Yet, on the other hand, because allegations involving trial counsel's and appellate counsel's ineffective assistance both constitute exceptional circumstances, we may consider Calhoun's allegations involving trial errors to the extent those allegations are raised within his ineffective assistance of counsel claims. See *Bledsoe*, 283 Kan. at 88-89.

*Aiding and Abetting Jury Instruction*

Below, Calhoun's principal argument concerned the giving of an aiding and abetting instruction. On appeal, Calhoun continues to challenge the giving of this instruction, arguing that trial counsel and appellate counsel provided ineffective assistance by not challenging the portion of the instruction telling the jury that it could convict him of any crimes that it believed were reasonably foreseeable consequences of the intended crime—aggravated robbery. He argues that the instruction lowered the State's burden of proof to convict him of his specific intent crimes—attempted voluntary manslaughter, aggravated kidnapping, aggravated burglary, and criminal threat. He also argues that our Supreme Court's decision in *Overstreet* supports that the instruction was erroneous. He, in turn, asserts that this court should reverse his specific intent convictions based on trial counsel's and appellate counsel's ineffective assistance.

At Calhoun's trial, the trial court provided the jury with the following instruction on aiding and abetting:

13

"A person who, either before or during its commission, intentionally aids, abets, advises, hires, counsels or procures another to commit a crime, with intent to promote or assist in its commission, is criminally responsible for the crime committed, regardless of the extent of the defendant's participation, if any, in the actual commission of the crime.

"In addition, a person is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by such person as a probable consequence of committing or attempting to commit the crime intended.

"All participants in a crime are equally guilty without regard to the extent of their participation. However, mere association with the principals who actually commit the crime, or mere presence in the vicinity of the crime, or mere failure to stop or report the crime, is insufficient to establish guilt as an aider or abettor. To be guilty of aiding and abetting in the commission of a crime, the defendant must willfully and knowingly associate himself with the unlawful venture, and willfully participate in it as he would in something he wishes to bring about or make succeed."

The first paragraph of the instruction mirrors PIK Crim. 3d 54.05 (2006 Supp.), which outlines when a defendant can be held responsible for crimes of another that the defendant also intended. This is the aiding and abetting same mental culpability instruction. The second paragraph follows PIK Crim. 3d 54.06 (2009 Supp.), which outlines when a defendant can be held responsible for crimes of another that the defendant did not intend. The second paragraph is the aiding and abetting foreseeability instruction.

Both the aiding and abetting same mental culpability and foreseeability instructions are based on the language of K.S.A. 21-3205. In relevant part, K.S.A. 21-3205 provides:

"(1) A person is criminally responsible for a crime committed by another if such person intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime.

14

"(2) A person liable under subsection (1) hereof is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by such person as a probable consequence of committing or attempting to commit the crime intended."

The language of the second and third paragraphs comes from *State v. Jackson*, 280 Kan. 16, 29, 118 P.3d 1238 (2005), where our Supreme Court held that this language fairly reflected the law as it pertained to Jackson's case. A jury convicted Jackson of first-degree premeditated murder, kidnapping, and conspiracy to commit murder under a theory of aiding and abetting. Yet, the *Jackson* court never considered the appropriateness of the aiding and abetting foreseeability instruction as it applied to Jackson's specific intent crimes. See 280 Kan. at 29-30. Further, the case preceded the *Overstreet* decision by over three years and *State v. Engelhardt*, 280 Kan. 113, 132, 119 P.3d 1148 (2005), another case about the aiding and abetting foreseeability instruction, by a week.

In *Overstreet*, our Supreme Court addressed the appropriateness of the aiding and abetting same mental culpability and foreseeability instructions when the defendant was charged with specific intent crimes. Overstreet had been charged with attempted first-degree premeditated murder and an alternative count of aggravated assault under a theory of aiding and abetting. As in Calhoun's case, the trial court provided the jury with an aiding and abetting instruction that first listed the same mental culpability language and then listed the foreseeability language. Overstreet argued that the trial court erred by giving the jury both the aiding and abetting same mental culpability and foreseeability instructions because it "relieved the State of its burden of proving premeditation—an essential element of attempted premeditated murder—beyond a reasonable doubt." 288 Kan. at 9.

In considering Overstreet's argument, our Supreme Court first relied on the *Engelhardt* decision, which held:

15

> "The specific intent required to be proved for conviction on a premeditated first-degree murder charge is premeditation. Therefore, under K.S.A. 21-3205(1), a person guilty of aiding and abetting a premeditated first-degree murder must be found, beyond a reasonable doubt, to have had the requisite premeditation to murder the victim." 280 Kan. at 132.

In other words, the *Engelhardt* court held that it was error to provide a jury with the aiding and abetting foreseeability instruction because it allowed the jury to convict the defendant of premeditated murder under a theory that the murder was a reasonably foreseeable consequence of some other intended crime, which impermissibly lowered the State's burden of proof. 280 Kan. at 133.

The *Overstreet* court determined that the *Engelhardt* decision controlled the resolution of Overstreet's case because attempted premeditated murder was a specific intent crime. 288 Kan. at 11. As a result, "the State was required to prove beyond a reasonable doubt that [Overstreet] 'intend[ed] to promote or assist' in the commission of an attempted first-degree premeditated murder." 288 Kan. at 11 (quoting *Engelhardt*, 280 Kan. at 131). Yet, the *Overstreet* court explained that when the trial court provided Overstreet's jury with the aiding and abetting foreseeability instruction, it told the jury that the jury could find him guilty of attempted premeditated murder regardless of whether he possessed the specific intent of premeditation; all that mattered was whether the jury believed the attempted premeditated murder was a reasonably foreseeable consequence of Overstreet's aggravated assault. Thus, like in *Engelhardt*, our Supreme Court held that "giving the aiding and abetting foreseeability instruction negated the State's burden to prove an essential element of the crime charged: premeditation." 288 Kan. at 11-12.

Next, our Supreme Court created a bright-line rule on the appropriateness of the aiding and abetting foreseeability instruction: "[F]or a defendant to be convicted of a

16

specific-intent crime on an aiding and abetting theory, that defendant must have the same specific intent to commit the crime as the principal." 288 Kan. at 13. Thus, when a defendant is charged with a specific intent crime under a theory of aiding and abetting, the jury should be given the aiding and abetting same mental culpability instruction, but not the aiding and abetting foreseeability instruction. If the defendant is charged with both specific intent and general intent crimes, the trial court must instruct the jury that it can use an aiding and abetting foreseeability instruction only when considering whether the defendant is guilty of general intent crimes.

Even though Overstreet did not object to the giving of the aiding and abetting foreseeability instruction below, our Supreme Court found the instructions were clearly erroneous. "Instructions are clearly erroneous only if the reviewing court is firmly convinced there is a real possibility that the jury would have rendered a different verdict if the error had not occurred." *Overstreet*, 288 Kan. 1, Syl. ¶ 1. The *Overstreet* court determined that the giving of the aiding and abetting foreseeability instruction in Overstreet's case was clearly erroneous because the conflicting aiding and abetting instructions and certain statements made by the prosecutor during closing arguments created a real possibility that the jury found him guilty of attempted premeditated murder "not because the defendant aided or abetted in the attempted premeditated murder but because the murder was a reasonably foreseeable consequence of the aggravated assault." 288 Kan. at 14-15. As a result, our Supreme Court reversed Overstreet's attempted premeditated murder conviction and remanded for a new trial. 288 Kan. at 15.

In this case, there is no dispute that the trial court provided the jury the aiding and abetting foreseeability instruction—PIK Crim. 3d 54.06. Next, there is no dispute that Calhoun was convicted of committing four specific intent crimes: aggravated kidnapping under K.S.A. 21-3421, attempted voluntary manslaughter under K.S.A. 21-3403, which was the lesser included offense of attempted intentional second-degree murder under K.S.A. 21-3402(a), aggravated burglary under K.S.A. 21-3716, and criminal threat under

17

K.S.A. 21-3419(a)(1). See *State v. Mattox*, 305 Kan. 1015, 1025, 390 P.3d 514 (2017) (holding that aggravated kidnapping is a specific intent crime); *State v. Daws*, 303 Kan. 785, 793, 368 P.3d 1074 (2016) (holding that aggravated burglary is a specific intent crime); *State v. Deal*, 293 Kan. 872, 883, 269 P.3d 1282 (2012) (holding that intentional second-degree murder is a specific intent crime); *State v. Richardson*, 289 Kan. 118, 122, 209 P.3d 696 (2009) (stating that criminal threat is a specific intent crime); *State v. Gutierrez*, 285 Kan. 332, 344, 172 P.3d 18 (2007) (holding that attempted voluntary manslaughter is a specific intent crime).

Indeed, the instructions provided to the jury stated that to find Calhoun guilty of aggravated kidnapping, Calhoun needed to take or confine S.E.C. by force or threat "with [the] intent to hold [S.E.C.] to facilitate the commission of any crime." For attempted voluntary manslaughter, Calhoun needed to act "with the intent to commit the crime of voluntary manslaughter" against Javier upon a sudden quarrel. For aggravated burglary, Calhoun needed to knowingly enter into Javier and S.E.C.'s house without authority while people were home "with the intent to commit an aggravated robbery therein." For criminal threat, Calhoun needed to threaten to commit violence "with the intent to terrorize [Javier and S.E.C.]."

Consequently, it is readily apparent that contrary to our Supreme Court's bright-line rule in *Overstreet*, Calhoun's jury had access to the aiding and abetting foreseeability instruction in determining Calhoun's guilt concerning specific intent crimes. Moreover, nothing within the jury instruction packet told the jury that it was limited to using the aiding and abetting foreseeability instruction while considering Calhoun's guilt concerning the charged general intent crimes.

Even so, at the jury instruction conference, trial counsel did not object to the giving of the aiding and abetting instruction that combined the aiding and abetting same

18

mental culpability and foreseeability instructions. And on appeal, appellate counsel did not challenge the inclusion of the aiding and abetting foreseeability instruction.

Although appellate counsel never raised this issue on Calhoun's direct appeal, the State contends that this court's decision in *Calhoun I* controls Calhoun's current ineffective assistance of counsel argument. The State alleges that in *Calhoun I* "this court examined the evidence in [Calhoun's] case in the context of the jury instructions on aiding and abetting, including the reasonable foreseeability portion, and concluded that sufficient evidence supported all of [Calhoun's] convictions." This is the exact same argument that the State made below, which the trial court adopted in its entirety.

The State's explanation of *Calhoun I* is misleading. In *Calhoun I*, Calhoun, through counsel, challenged whether the language in the aiding and abetting same mental culpability instruction—PIK Crim. 3d 54.05—provided at Calhoun's trial created alternative means of committing a crime. The *Calhoun I* court relied on language from *State v. Boyd*, 46 Kan. App. 2d 945, 268 P.3d 1210 (2011), *overruled in part by State v. Betancourt*, 299 Kan. 131, 322 P.3d 353 (2014), to hold that the language in the aiding and abetting foreseeability instruction—PIK Crim. 3d 54.06—created no alternative means to committing the crime; thus, so long as Calhoun's crimes were a reasonably foreseeable consequence of Calhoun's intended crime, his convictions were legally valid. 2013 WL 2991066, at *2-3. The *Calhoun I* court went on to find that "aggravated robbery, aggravated criminal sodomy, aggravated battery, criminal threat, aggravated kidnapping, and attempted voluntary manslaughter, are considered a foreseeable consequence of the inherently dangerous felony Calhoun intended to commit," and sufficient evidence supported these convictions. 2013 WL 2991066, at *3.

Clearly, the *Calhoun I* court did not consider the argument that Calhoun is raising now: trial and appellate counsel provided ineffective assistance because they never challenged the giving of the aiding and abetting foreseeability instruction, which lowered

the State's burden of proof to convict him of his specific intent crimes at trial. Indeed, it is readily apparent that the *Calhoun I* court worked under the premise that the aiding and abetting foreseeability instruction was legally appropriate as to all of Calhoun's crimes because nobody had challenged the validity of the instruction. As a result, the State's argument, and also the trial court's ruling, is incorrect.

Turning our focus back to a movant's burden under K.S.A. 60-1507, we note that if a movant makes more than conclusory contentions and an evidentiary basis supports movant's claims, the movant is entitled to an evidentiary hearing. *Grossman*, 300 Kan. at 1062. Moreover, when ineffective assistance of counsel and prejudice is readily apparent from the motion, files, and records of the movant's case, this court has exercised its de novo review and reversed the defendant's conviction and remanded for a new trial without first remanding for an evidentiary hearing. *Vontress v. State*, No. 101,434, 2010 WL 2545646, at *2 (Kan. App. 2010); see *Eddy v. State*, No. 114,229, 2016 WL 4259994 (Kan. App. 2016) (unpublished opinion) (reversing Eddy's multiplicitous convictions following a preliminary hearing based on ineffective assistance of appellate counsel).

For example, in *Vontress*, Vontress argued that his appellate counsel was ineffective for not challenging an instruction stating the jury could not consider whether he was guilty of a lesser included offense "unless and until" it found him not guilty of a different lesser included offense. 2010 WL 2545646, at *1. The trial court summarily denied Vontress' K.S.A. 60-1507 motion, ruling "that the jury instruction issue raised by Vontress had already been decided against [him] in his direct appeal." 2010 WL 2545646, at *2.

On appeal from the summary denial of his motion, this court first noted that the instruction issue was not previously raised and ruled on in Vontress' direct appeal. Instead, a different issue involving the jury instructions was raised in Vontress' direct appeal. 2010 WL 2545646, at *2-3. Next, this court recognized that although an appellate

20

court's failure to raise an issue is not per se ineffective assistance of counsel, when an instruction error is clearly erroneous, counsel's failure to challenge that instruction necessarily constitutes ineffective assistance of counsel. 2010 WL 2545646, at *3-6. After finding that the instruction was clearly erroneous because there was a real possibility the jury would have reached a different verdict if properly instructed, this court found that both prongs of the ineffective assistance of counsel test had necessarily been met. 2010 WL 2545646, at *6. In turn, this court reversed Vontress' second-degree murder conviction and remanded for a new trial without first remanding for an evidentiary hearing. 2010 WL 2545646, at *7.

Yet, before addressing the instructional error as it relates to those specific intent convictions, it is first important to note that Calhoun cannot establish that the instruction was prejudicial as it pertains to his aggravated burglary conviction. Again, Calhoun explicitly testified that he went to Javier and S.E.C.'s house with the intent to rob Javier of his marijuana and money. Once at the house, he testified that after he, Little, and Thompson could not break into the garage, they pushed their way through the front door of Javier and S.E.C.'s house to get the garage door key from Javier. Simply put, Calhoun's trial testimony eliminates any questions of whether there was a real possibility that the jury would have reached a different aggravated burglary verdict had the trial court properly instructed the jury.

Regarding his remaining specific intent convictions, however, the confusion that the aiding and abetting instructions created here is far greater than the confusion the aiding and abetting instructions created in *Overstreet*. For instance, in *Overstreet*, our Supreme Court found that the three instances where the prosecutor highlighted the aiding and abetting foreseeability instruction during closing arguments exacerbated the confusion. 288 Kan. at 14. Here, the prosecutor's entire rebuttal during closing arguments hinged on telling the jury that they could convict Calhoun of all the crimes charged because they were reasonably foreseeable consequences of the aggravated robbery:

21

"The defendant tells you a lot . . . . [H]e told you that he was just looking around, he says that he was just going out to the garage to see what they were doing . . . .

"But what did he tell the detective three and a half months after this happened? He told you all about their plan. *And is it foreseeable? You know, he would love you to only hold, you know, each person accountable for what they did, but that is not Kansas law. It's not Kansas law.* Agendas change through a crime when something happens. You know, they're going in there to rob them of money and they have no money, agendas change.

"Well, let's rob 'em of something else, let's rape her, let's take the DVD instead of the money, oh, let's get the jewelry instead of the money, agendas change as events change. And that's what happened here.

"The whole defense is trying to minimize the defendant's behavior. . . . .

"Well, if I say I didn't hear a gunshot, then there [were not] any gunshots. Well, if I say I just . . . stepped outside on the porch and didn't hear or see what's going on, then you know, I'm not involved. Well, if I say I just, you know, saw through a crack in the door that the wife was naked and Christopher and [M.D.] were pulling up their pants, if I just say I know I just saw that, then I wasn't involved. . . .

". . . You look at the actions of these guys and you use your common sense, are the crimes foreseeable. If you decide, if you decide that the defendant did not intend and was not part of those, the sex crimes, the kidnapping, if you decide that, are the other crimes foreseeable?

"When four masked men, armed, go into the home in the middle of the night is it foreseeable that they'll get all the adults in one room so nobody can escape to call the police, so nobody, you know—so they can go about their business in the house? Yes.

"Is it foreseeable that they will rape, sodomize, anally and orally, the pretty wife because they didn't find any money? *Is it foreseeable that they will shoot the husband when he won't tell 'em where the money is? Yes. Is it foreseeable that they will shoot and beat the husband almost to the point of killing him, because they're so mad because their crime that they wanted to commit didn't happen?*

"Is it foreseeable that they would go to try to steal other stuff, DVDs, jewelry, all that kind of stuff, because they didn't get the money that they wanted to get? Yes. *This case is not about Isaac Little committ[ing] attempted murder*, this case is not about

22

[M.D.] committ[ing] the rape in the bedroom, this case is not about Christopher Thompson committ[ing] the oral sex and the anal sex in the garage.

"... *In this case everybody had something different to do, but in the end they all together committed these crimes. That's what aiding and abetting is*, it's defendant or another, they don't have to specifically be the one with the gun, they don't have to specifically be the one that puts their penis in someone's anus, they don't have to specifically be the one that shoots someone in the torso two times, that shoots someone in the head. . . .

. . . .

"*This case is about these four Musketeers, all for one, one for all. That's Kansas law. When you go in to commit a violent crime and more violence happens, that more violence is foreseeable.* Find him guilty as charged. Thank you." (Emphases added.)

Next, during deliberations, the jury asked the trial court questions about the aiding and abetting jury instruction. Evidently, the trial court, counsel, and the prosecutor addressed the jury's questions in private before creating a record of their response. The individual jury questions do not appear in the record on appeal. Yet, according to the trial court's account of the jury's questions on the record, the jury asked "various questions about aiding and abetting." The agreed upon response to those various questions was as follows: "[R]egarding your inquiries about aiding and abetting, the reasonable foreseeability of any crime is a question for the jury to decide and the reasonable foreseeability of each count must be considered separately." Thus, the jury's confusion on how to properly use the aiding and abetting foreseeability instruction was evident.

Moreover, although K.S.A. 60-441 bars this court from considering B.R.'s and D.M.'s statements suggesting that the jury did, in fact, convict Calhoun of the specific intent crimes under the theory of foreseeability, the fact that Calhoun was acquitted of rape and three counts of aggravated criminal sodomy establishes that the jury did not believe Calhoun aided and abetted in the commission of all the crimes. See *State v. Franklin*, 264 Kan. 496, 499-504, 958 P.2d 611 (1998) (holding that a juror's testimony on whether a unanimity instruction caused confusion during deliberations violated K.S.A.

23

60-441). And, as shown by the prosecutor during closing arguments, Calhoun's defense centered on alleging that he was not an active participant in the crimes at Javier and S.E.C.'s house.

To review, Calhoun denied committing any of the violent crimes against Javier, S.E.C., or the baby. Calhoun alleged that Little was the only person with a gun. Indeed, he alleged that Little was the person who forced Javier to get down on the ground, and he was not present when S.E.C. was placed next to Javier. He alleged that he yanked the baby from Little when Little had put a gun up against the baby's head. He denied participating in any of the sex assaults against S.E.C. He also asserted that he tried to stop Little from shooting Javier, yelling at Little to stop shooting.

In addition, important elements of Calhoun's testimony was supported by the State's witnesses. Javier and S.E.C. both indicated that they only saw one man with a gun. Javier asserted that the man with the gun was the man who threatened his infant son and the only man who shot him. S.E.C. testified that she heard one of the men yell "stop shooting" at the gunman. Last, M.D. testified that Little was the man with the gun who shot Javier.

In short, there was far more evidence than there was in *Overstreet* that the aiding and abetting foreseeability instruction adversely affected the outcome of Calhoun's jury trial. The prosecutor's statements about the instruction were many and at length. The prosecutor even stated that the aiding and abetting foreseeability instruction as it applied to Calhoun's case was "Kansas law." On top of that, the jury had "various" questions about aiding and abetting, and based on the trial court's response to the jury's questions, their questions centered on applying the aiding and abetting foreseeability instruction. The trial court's response only made matters worse because the trial court reemphasized that the aiding and abetting foreseeability instruction was valid law as to all of Calhoun's crimes. Further, the aiding and abetting foreseeability instruction undermined Calhoun's

24

defense that he never *intended* for the violent crimes to occur, which was corroborated by some of the State's witnesses. Thus, it is readily apparent that the giving of the instruction resulted in clear error because there was a real possibility that the jury would have found Calhoun not guilty of aggravated kidnapping, attempted voluntary manslaughter, and criminal threat if it had been properly instructed.

In turn, it is also readily apparent that trial and appellate counsel's failures to challenge the aiding and abetting foreseeability instruction constituted prejudicial ineffective assistance of counsel. Simply put, the motion, files, and records of Calhoun's case establish that but for trial counsel's failure to object to the aiding and abetting foreseeability instruction at Calhoun's trial, there was a reasonable probability that he would not have been convicted of aggravated kidnapping, attempted voluntary manslaughter, and criminal threat. This same evidence also establishes that had appellate counsel challenged the aiding and abetting foreseeability instruction as clearly erroneous on Calhoun's direct appeal, this court would have found the aiding and abetting foreseeability instruction clearly erroneous.

As the *Vontress* court explained: "Having found clear error due to a real possibility the jury would have rendered a different verdict had the proper instruction been provided, we necessarily conclude that both parts of the ineffective assistance of counsel test have been met." 2010 WL 2545646, at *6. For these reasons, like in *Vontress*, Calhoun is entitled to reversal of his aggravated kidnapping, attempted voluntary manslaughter, and criminal threat convictions based on ineffective assistance of counsel.

*Remaining Allegations of Ineffective Assistance of Counsel Fail*

Calhoun's remaining allegations of ineffective assistance of counsel fail for the following reasons.

25

1. Calhoun alleges that counsel were ineffective for not challenging the lack of instruction stating that "hearsay evidence can only be considered for impeachment of the declarant and not as substantive evidence of guilt." This is not supported by K.S.A. 2017 Supp. 60-460—the law on admission of hearsay. To the extent that his argument challenges the allegation that "law enforcement officers [were allowed] to testify first regarding hearsay statements made by the actual witnesses . . . ," K.S.A. 2017 Supp. 60-460(a) allows this testimony under the "[p]revious statements of persons present" hearsay exception.

2. Calhoun argues that counsel should have challenged his amended complaint as defective because it charged him with simple kidnapping instead of aggravated kidnapping. Calhoun fails to explain that the State made this amendment after his trial in an attempt to memorialize an oral amendment during his trial that amended his aggravated kidnapping charge from listing both Javier and S.E.C. as victims to listing just S.E.C. as a victim. The oral amendments to the complaint were effective when the trial court granted them at Calhoun's trial. See *State v. Nunn*, 244 Kan. 207, 224, 768 P.2d 268 (1989). And under K.S.A. 22-3201(e), courts may allow amendments "*at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced.*" (Emphasis added.) Thus, the State's postverdict amendment changing Calhoun's charge from aggravated kidnapping to simple kidnapping was prohibited under K.S.A. 22-3201(e).

3. Calhoun argues that counsel should have challenged his attempted voluntary manslaughter conviction as legally impossible because (1) a person cannot be convicted of committing or attempting to commit voluntary manslaughter upon a sudden quarrel under a theory of aiding or abetting, and (2) all attempted murders are actually aggravated batteries. "Attempted voluntary manslaughter is a valid

26

crime in Kansas." *Gutierrez*, 285 Kan. at 344. Both the crimes of attempted murder and attempted voluntary manslaughter require an attempt to kill, but aggravated battery does not, making the offenses distinct crimes. See 285 Kan. at 344.

4. Calhoun argues that his counsel should have challenged his four aggravated criminal sodomy charges as multiplicitous. Disregarding the other problems with this argument, this argument is moot since Calhoun was convicted of only one count of aggravated criminal sodomy.

5. Calhoun argues that his counsel were ineffective for not asserting that insufficient evidence supported his aggravated criminal sodomy conviction because no evidence supported that he acted as the principal. K.S.A. 21-3506(a)(3), the aggravated criminal sodomy statute that Calhoun was convicted under, is a general intent crime. See *State v. Plunkett*, 261 Kan. 1024, 1033, 934 P.2d 113 (1997). This court determined that aggravated criminal sodomy was a reasonably foreseeable consequence of aggravated robbery in *Calhoun I*, 2013 WL 2991066, at *3. Accordingly, Calhoun cannot establish ineffective assistance of counsel.

6. Calhoun argues that his counsel were ineffective for not asserting that insufficient evidence supported his aggravated kidnapping conviction because "the movement of the victim, S.E.C., constituted part of some other crime—she was moved to the living room to be questioned about where the drugs and money were, then taken to the bedroom to be raped, and then taken to the garage to open it for them so they could search it for drugs and money." Disregarding the other problems with this argument, Calhoun was not convicted of rape. Therefore, this argument is moot.

7. Calhoun argues that his counsel were ineffective for not asserting that insufficient evidence supported his aggravated burglary conviction because he did not enter Javier and S.E.C.'s "drug house" without authority. Calhoun relies on our Supreme Court's decision in *State v. Johnson*, 266 Kan. 322, 970 P.2d 990 (1998). The

27

*Johnson* court held that a drug house was not burglarized when the would-be burglars entered the house with the drug dealer's authority under the ruse that they were there to discuss drugs. 266 Kan. at 327-33. Here, Calhoun and his accomplices entered Javier and S.E.C.'s house at gunpoint. Therefore, his case is distinguishable from the *Johnson* case.

8. Calhoun asserts his counsel were ineffective for not raising ten individual claims of prosecutorial error, that can be grouped as follows:  (1) that the prosecutor misstated that law on aiding and abetting; (2) that the prosecutor started finishing a witness' responses; (3) that the prosecutor interjected her opinions on facts in evidence on two separate occasions; (4) that the prosecutor asked leading questions during direct examination on two separate occasions; and (5) that the prosecutor admitted or relied on irrelevant evidence on four separate occasions. Calhoun's claim about the prosecutor misstating the law on aiding and abetting has been fully addressed in the preceding section. Otherwise, for each of his prosecutorial error claims, Calhoun has not explained why either trial or appellate counsel should have challenged the prosecutor's actions. K.S.A. 60-1507 movants must make more than conclusory arguments to obtain relief. *Sola-Morales*, 300 Kan. at 881. Calhoun's arguments are conclusory.

9. Calhoun argues that appellate counsel was ineffective for not arguing that the jury reached a compromised verdict and engaged in misconduct. Calhoun also contends that this argument, which he admits was untimely under K.S.A. 60-1507(f), related back to his timely filed K.S.A. 60-1507 motion because in that motion, he noted he would raise "other instances" of ineffective assistance of counsel at "the hearing." In *Pabst v. State*, 287 Kan. 1, 25, 192 P.3d 630 (2008), our Supreme Court held that movants alleging ineffective assistance of counsel under K.S.A. 60-1507 are not entitled to amend their motion to raise a new claim of ineffective assistance after the K.S.A. 60-1507(f) time limit has run simply because they had previously argued

28

ineffective assistance of counsel. Thus, Calhoun's broad statement does not meet the relation-back test. Also, the trial court correctly denied Calhoun's motion for new trial based on *Kaiser*, a case where our Supreme Court held that a juror's agreement to a verdict that was followed by a change of mind after entering the verdict was not a basis for a new trial. 260 Kan. at 249-52. This "relates to [a juror's] mental process in determining the verdict and is prohibited by K.S.A. 60-441." *Kaiser*, 260 Kan. at 252.

10. Calhoun asserts that trial counsel should have stipulated to uncontested prejudicial facts, "i.e. [r]ape, sodomies, shooting, etc.," to keep the unnecessary and prejudicial evidence out of his trial. He asserts that the failure to stipulate to this evidence inflamed the passions of the jury, hurting his defense that he was not involved in anything but the robbery. Calhoun's argument is premised on his belief that the facts surrounding the rape, sodomies, and shooting were uncontested. The evidence presented at trial, however, indicated that although some facts surrounding the rape, sodomies, and shooting were uncontested, other facts were contested. Calhoun provides no insight about how counsel could have stipulated to these facts. A stipulation cannot exist if there is no agreement of fact.

11. Calhoun complains that trial counsel failed to locate certain unnamed witnesses who could have testified about Javier's drug business. He also complains that counsel did not sequester witnesses. Yet, Calhoun has not explained how counsel's actions were ineffective or resulted in prejudice. Thus, his arguments are conclusory. See *Horn v. State*, No. 114,982, 2016 WL 7429319, at *15 (Kan. App. 2016) (unpublished opinion) (rejecting movant's claims about failure to sequester witnesses as conclusory).

29

*Conclusion*

Because the record establishes ineffective assistance of counsel and prejudice, we reverse Calhoun's aggravated kidnapping, attempted voluntary manslaughter, and criminal threat convictions, and remand for a new trial.

Affirmed in part, reversed in part, and remanded.