NOT DESIGNATED FOR PUBLICATION

No. 119,028

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHN W. DODGE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed February 15, 2019. Affirmed.

*Roger L. Falk*, of Joseph, Hollander & Craft, LLC, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., PIERRON and GREEN, JJ.

PER CURIAM: John W. Dodge appeals the trial court's summary dismissal of his second K.S.A. 60-1507 motion. For the reasons stated below, we affirm.

In 2003, a jury convicted John Dodge on one count of rape and two counts of aggravated criminal sodomy; the victim was his stepdaughter J.M.M. On direct appeal, a panel of this court affirmed Dodge's convictions in a decision issued on November 19,

1

2004. *State v. Dodge*, No. 90,773, 2004 WL 2659055 (Kan. App. 2004) (unpublished opinion). Our Supreme Court denied review on May 4, 2005. 279 Kan. 1008 (2005).

In 2006, attorney Kiehl Rathbun filed a K.S.A. 60-1507 motion on Dodge's behalf. The motion alleged Dodge was "forced to testify in violation of his constitutional right against self-incrimination" and claimed ineffective assistance of counsel at the trial level by his trial attorney, Philip White. During a nonevidentiary hearing, the court ordered Rathbun to draft a pretrial order for the 1507 hearing; Rathbun never drafted the order. *Dodge v. State*, No. 101,267, 2010 WL 3731171, at *2 (Kan. App. 2010) (unpublished opinion). Instead, the assistant district attorney drafted a pretrial order and faxed the order to Rathbun. Rathbun did not sign the order.

The pretrial order limited the evidentiary hearing to two claims: (1) "Trial counsel was ineffective for relying on movant's family members to prepare movant for his testimony at trial" and (2) Trial counsel was ineffective for "failing to request a recess and request assistance enforcing a subpoena" on another man, John Coffee, whom Dodge's victim had allegedly previously falsely accused of sexual abuse.

Eventually, Michael Brown replaced Rathbun as Dodge's attorney for the K.S.A. 1507 hearing. A year after Brown entered the case, the trial court conducted an evidentiary hearing on the issues listed in the pretrial order. During the hearing, Brown explicitly stated:

> "[W]e're here as a result of a pretrial conference order . . . . [T]he two issues we're dealing
> with today are . . . whether or not trial counsel was ineffective for relying upon the
> movant's family members to prepare the movant . . . for his testimony at trial. And . . .
> whether or not trial counsel was ineffective for failing to request a recess and request
> assistance in enforcing a subpoena [for John Coffee]. . . ."

Thus, this K.S.A. 60-1507 motion was restricted to the previously mentioned issues.

2

After the hearing, the trial court issued an order denying relief. A panel of this court affirmed the trial court's decision in *Dodge*, 2010 WL 3731171, at *9. Our Supreme Court denied review on September 23, 2011. 292 Kan. 964 (2011).

In April 2017, Dodge filed a "Petition for relief pursuant to K.S.A. 60-1507 under relations back doctrine pursuant to K.S.A. 60-215(c)." In this motion, Dodge accused the assistant district attorney in the original 1507 case of prosecutorial misconduct. Dodge also accused his trial, appellate, and habeas counsel of legal malpractice. Dodge argued his claims of ineffective assistance by his trial counsel related back to his original 1507 under K.S.A. 60-215(c). He also claimed he should be allowed to relate back his new 1507 under the "fundamental miscarriage of justice" exception. Further, he claims his successive 1507 should nevertheless be heard under the "exceptional circumstances" theory. Finally, he argued that the trial court should nevertheless entertain his untimely motion because, under the *Vontress v. State*, 299 Kan. 607, 616, 325 P.3d 1114 (2014) factors, he demonstrated "manifest injustice."

The trial court summarily denied this motion. The trial court wrote that "[t]his case has been fully considered and disposed of. The movant's petition is untimely. He is attempting to raise issues that were or should have been considered in the original petition."

*Did the Trial Court Err by Dismissing Dodge's K.S.A. 60-1507 Motion?*

*Standard of Review*

When, as here, trial courts deny movants' K.S.A. 60-1507 motions summarily without a hearing, appellate courts apply de novo review. *Holt v. State*, 290 Kan. 491, 495, 232 P.3d 848 (2010). De novo review requires this court to "determine whether the

3

motion, files, and records of the case conclusively show the movant is entitled to no relief." *Trotter v. State*, 288 Kan. 112, 132, 200 P.3d 1236 (2009).

*Untimely:*

A defendant subject to a criminal sentence can generally file a K.S.A. 60-1507 motion to collaterally challenge his or her sentence after exhausting their direct appeals. A defendant has one year after his or her conviction becomes final (i.e., after all direct appeals are exhausted) to file a 60-1507 motion. K.S.A. 2017 Supp. 60-1507(f)(1). Motions not filed within one year are untimely and allowed "only to prevent a manifest injustice." K.S.A. 2017 Supp. 60-1507(f)(2).

Here, Dodge exhausted his direct appeal after our Supreme Court denied review of this court's decision on his direct appeal in May 2005. Dodge filed his first K.S.A. 60-1507 motion in May 2006, represented by Rathbun. The trial court denied Dodge's first 1507 motion in 2008. This court affirmed the trial court in 2010. 2010 WL 3731171, at *9. Our Supreme Court denied review on September 23, 2011. Nearly six years later in April 2017, Dodge filed his second 1507 motion, the one at issue here. Because Dodge's second K.S.A. 60-1507 motion was filed more than 11 years after the exhaustion of his direct appeals, it is untimely.

*Successive:*

Under Kansas Supreme Court Rule 183(d) (2019 Kan. S. Ct. R. 230), courts "may not consider a second or successive motion for relief" from the same prisoner when "(1) the ground for relief was determined adversely to the movant on a prior motion; (2) the prior determination was on the merits; and (3) justice would not be served by reaching the merits of the subsequent motion."

4

The movant bears the burden to show his or her K.S.A. 60-1507 motion warrants an evidentiary hearing. This requires "more than conclusory contentions," and the movant "must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record." *Holt*, 290 Kan. 491, Syl. ¶ 3.

The court does not have to grant an evidentiary hearing on successive K.S.A. 60-1507 motions, even if the movant provides the requisite factual basis in the record. 290 Kan. at 495-96. Specifically, courts need not entertain successive 1507 motions from the same prisoner unless exceptional circumstances justify considering it. *Trotter*, 296 Kan. at 904. "A movant in a K.S.A. 60-1507 motion is presumed to have listed all grounds for relief, and a subsequent motion need not be considered in the absence of a showing of circumstances justifying the original failure to list a ground." 296 Kan. 898, Syl. ¶ 2.

Because the 2017 motion is Dodge's second motion, it is successive with respect to those claims that were listed or could have been listed in Dodge's original 2006 motion. See, e.g., *Mattox v. Kansas*, No. 114,972, 2018 WL 793528, at *5 (Kan. App. 2018) (unpublished opinion) ("Mattox provides no explanation why he could not have asserted this argument based on his 2002 diagnosis . . . in his 2007 K.S.A. 60-1507 motion. Accordingly, we find Mattox has waived and abandoned his exceptional circumstances argument.").

Dodge argues that the trial court erred by summarily denying his untimely and successive motion. First, Dodge argues that "his claims should relate back to his original pleadin[g] and are therefore timely." Second, Dodge argues that the trial court should have entertained his successive petition because he showed "exceptional circumstances." On appeal, Dodge does not address the showing of "manifest injustice" he is required to make in order to sustain an untimely 1507 motion. See K.S.A. 2017 Supp. 60-1507(f)(2).

5

*Relation back:*

Dodge first argues that the trial court erred by summarily denying his claims because the 2017 motion claims "relate back" to the claims he made in his original 1507 motion. As the State correctly points out, Dodge did not have the ability to amend as of right. "While movants filing 60-1507 motions generally do not have the right to amend their original motions, they may do so if the district court, in its discretion, allows them to. *Thompson v. State*, 293 Kan. 704, 714, 270 P.3d 1089 (2011)." *Hongphakdy v. State*, No. 116,625, 2017 WL 2022871, at *2 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 986 (2018). A court abuses its discretion when it bases its decision on an error of law or fact or is unreasonable such that no reasonable person would agree with the trial court's view. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Here, the trial court did not grant Dodge permission to construe his April 2017 motion as an amendment to his May 2006 motion.

Dodge argues that his April 2017 motion claims "relate back to his original pleading and are therefore timely." Dodge came to this conclusion erroneously. He cites *Thompson*, but misconstrues it. *Thompson* discusses the difference between amendment as of right and amendment permitted with leave of the court. 293 Kan. at 713-14. In *Thompson*, our Supreme Court wrote:

> "Two avenues of amendment are available under K.S.A. 60-215(a), one as of right that is inapplicable to K.S.A. 60-1507 motions, and one with leave of court that is applicable to K.S.A. 60-1507 motions, as well as other pleadings. If an amendment to a K.S.A. 60-1507 motion is permitted, the timeliness of amended claims is subject to the *Pabst* time and type test enunciated in K.S.A. 60-215(c), *i.e.*, relation back is permitted only if the new claims arose 'out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" 293 Kan. at 714.

6

Thus, Dodge was not entitled to amendment as of right simply because he alleges his April 2017 claims arise from facts of the same time and type as his original allegations. The trial court could, in its discretion, permit his amendment provided that the April 2017 claims met the time and type requirements. Courts should "freely give leave when justice so requires." K.S.A. 2017 Supp. 60-215(a)(2). But this court "generally reviews a district judge's decision on a motion to amend pleadings for abuse of discretion." 293 Kan. at 709. The trial court was not required to allow Dodge to amend his claim as of right, and Dodge makes no argument that the trial court abused its discretion by declining his motion to amend. "Issues not adequately briefed are deemed waived and abandoned." *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017).

*Exceptional circumstances*:

Dodge's claims in his 2017 motion can be classified in three groups: (1) those that arose after he filed his original 1507; (2) those that could have been raised in his original 1507, but were not, and (3) those that were raised in his original 1507.

Dodge alleged the following in his original 1507:

- He was forced to testify in violation of his rights under the Fifth Amendment to the United States Constitution.
- Ineffective assistance of his trial counsel, White. Specifically:
  - Failure to introduce a forensic psychologist's report stating Dodge was not attracted to children.
  - Failure to engage a medical expert to testify that J.M.M. did not show physical signs of sexual abuse.
  - Failure to use investigator to impeach State's medical expert.
  - The failure to call J.M.M.'s teachers and paternal grandparents to testify that they never witnessed or suspected abuse.

7

o Failure to seek or introduce records from an alleged emergency room visit during the time period of alleged abuse. Alleges physicians examined J.M.M. for sexual abuse at time of visit and found none.

o Failure to enforce a subpoena and make Randall Coffee appear at trial. Dodge alleged J.M.M. had previously made false sexual abuse allegations against Coffee.

o Failure to prepare Dodge to deal with K.S.A. 60-455 evidence of his prior convictions for child rape.

o Failure to prepare Dodge to testify whatsoever.

o Failure to adequately argue the K.S.A. 60-455 issue, resulting in Dodge's prior convictions coming in.

Dodge alleged the following in his 2017 K.S.A. 60-1507 motion:

● Misconduct by the assistant district attorney during his original 1507 proceedings.

● Rathbun, Dodge's first attorney in the original 1507, abandoned him after filing the initial 1507 motion, thus failing to draft the pretrial order or sign the pretrial order later drafted by the assistant district attorney.

● Issues with the probable cause affidavit and charging documents.

● Claim that White "failed to research, investigate, and execute a feasible trial strategy that had any merit whatsoever."

o Claim that White was ineffective because he did not call a medical expert to testify as to whether physical examination of victim showed signs of sexual abuse.

o Allegations that White had Dodge pay $3,000 for the State's medical expert witness to appear at the trial.

● Conflict of interest and other ineffective assistance of counsel by Melanie Morgan, Dodge's attorney during his direct criminal appeal.

8

- Claim that his sentence is "excessive, inordinate, cruel, and unusual."
- Claim that Dodge will provide the court with a sworn affidavit from J.M.M.'s mother that will show that J.M.M. confided to her mom that the allegations against Dodge were false. Dodge states this will show he is actually innocent.

Dodge's allegations about prosecutorial misconduct during the original K.S.A. 60-1507 hearing and ineffective assistance of counsel from Rathbun arose after Dodge's original K.S.A. 60-1507 motion was filed. Thus, these claims would not be considered "successive" under Rule 183(d), though they are still untimely under K.S.A. 2017 Supp. 60-1507(f)(1).

The claims Dodge raised in his 2017 motion that arose before he filed his 2006 motion, however, are both untimely and successive. Courts may dismiss a successive K.S.A. 60-1507 motion as an abuse of remedy. To prevent dismissal of his or her successive motion, a movant must establish exceptional circumstances. *State v. Mitchell*, 284 Kan. 374, 379, 162 P.3d 18 (2007). "Exceptional circumstances are unusual events or intervening changes in the law that prevented the defendant from raising the issue in a preceding 60-1507 motion." 284 Kan. at 379. *Hartfield v. State*, No. 118,460, 2018 WL 6253050, at *4 (Kan. App. 2018) (unpublished opinion). Thus, to prevail on his claim that the trial court erred by summarily dismissing his claims that predated his original 1507, Dodge must show that "exceptional circumstances" indicate the trial court should have nevertheless heard these successive claims.

On appeal, Dodge argues that ineffective assistance of counsel by Rathbun during the original 1507 constitutes "exceptional circumstances" sufficient to salvage his successive motion. He does not identify the alleged prosecutorial misconduct as exceptional circumstances, so this court will not consider that argument on appeal. "Issues not adequately briefed are deemed waived and abandoned." *Russell*, 306 Kan. at

9

1089. Dodge does not cite to Kansas authority establishing that ineffective assistance of counsel constitutes "exceptional circumstances," but instead he cites heavily to varying federal authority. Our Supreme Court has previously held, however, that "[i]neffective assistance of counsel can qualify as an exceptional circumstance." *Rowland v. State*, 289 Kan. 1076, 1087, 219 P.3d 1212 (2009).

In short, Dodge's argument is thus: Rathbun abandoned the case and never drafted the pretrial order as he was ordered to by the court. Accordingly, the State drafted the pretrial order limiting the issues at the evidentiary hearing to (a) whether White was ineffective for relying on Dodge's family members to prepare him to testify, and (b) whether White was ineffective for failing to enforce Coffee's subpoena. Dodge argues Rathbun was therefore ineffective because the above procedural posture resulted in waiver of all the remaining K.S.A. 60-1507 claims Dodge raised in his 2006 motion.

To prevail on a claim of ineffective assistance of trial counsel, a prisoner must establish (1) the performance of counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability that the proceedings would have had a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014). Here, this court determines that Dodge has asserted facts, with an evidentiary basis in the record, sufficient to support his allegations of ineffective assistance by Rathbun. Dodge alleges that Rathbun failed to draft the pretrial order setting the issues for the evidentiary hearing, failed to sign the order that the State eventually drafted, and effectively abandoned Dodge in the case. These allegations are supported by the record, and indeed this court mentioned said facts during its decision on Dodge's first K.S.A. 60-1507 motion. See *Dodge*, 2010 WL 3731171, at *2.

Although the above argument is compelling, it does not apply to all of Dodge's 2017 K.S.A. 60-1507 claims. Using the logic of successive motions as defined by Rule

10

183(d), this reasoning applies only to those arguments that Dodge actually raised in his original 1507 and then raised again in the 2017 motion. The only arguments meeting this criteria is Dodge's claim that White was ineffective because he failed to impeach the State's medical expert with his prior statement that J.M.M.'s hymen was intact, and that White was ineffective because he did not call his own medical expert to testify that because J.M.M.'s genitalia was intact, it was unlikely that she was a victim of rape as she had described. Dodge also argued in both 1507s that White had Dodge pay $3,000 to fly the State's expert in for trial, but he does not explain why this constituted ineffective assistance of counsel.

Thus, three of Dodge's 2017 K.S.A. 60-1507 claims survive the hurdle of successiveness. They are: (1) prosecutorial misconduct in Dodge's original K.S.A. 60-1507 proceedings; (2) ineffective assistance of counsel by Rathbun during Dodge's original 1507 proceedings, and (3) ineffective assistance of counsel by White for failing to impeach the State's medical testimony introducing exculpatory expert medical testimony.

Next, we will briefly consider the remaining claims from Dodge's 2017 motion.

First, Dodge could have raised his claim of ineffective assistance of counsel by his direct appellate counsel, Morgan, during his original K.S.A. 60-1507. He failed to do so and fails to provide "exceptional circumstances" explaining why this court should nevertheless entertain this successive claim. This claim therefore fails.

Similarly, Dodge argued for the first time in his 2017 motion that his sentence is "excessive, inordinate, cruel, and unusual." Again, Dodge could have raised this argument in his original K.S.A. 60-1507 motion but failed to do so and does not show any "exceptional circumstances" compelling this court to entertain the successive claim. Thus, this claim similarly fails.

11

Finally, Dodge claims repeatedly that he is "actually, factually" innocent. Dodge makes two allegations in support of this "actual, factual" innocence. First, he says that if given the opportunity, he would produce a medical expert who would explain that J.M.M.'s intact hymen means that Dodge could not have raped J.M.M. as alleged. The trial record forecloses the viability of this claim; this is addressed in detail below. Dodge also says that he will offer a sworn affidavit from J.M.M.'s mother stating that J.M.M. told her mother that the allegations were false. Dodge, however, did not attach any such affidavit to his motion, nor does one appear in the record. Thus, this court does not have a sworn affidavit from the victim stating the allegations were false, nor even a sworn affidavit from the victim's mother stating that the victim later recanted. Rather, all this court has is Dodge's word that he would produce such an affidavit. This was insufficient "new evidence" to warrant K.S.A. 60-1507 relief on the basis of a colorable claim of actual innocence. Additionally, Dodge does not provide any context for this alleged recantation to J.M.M.'s mother, so we do not know if the evidence was available to him when his original K.S.A. 60-1507 motion was filed. On appeal, Dodge does not address his "actual innocence" claims, thus waiving any argument that his claim of actual innocence is a procedural vehicle to preserve his untimely and successive claims. "Issues not adequately briefed are deemed waived and abandoned." *Russell*, 306 Kan. at 1089.

Further, the third-hand conclusory claim that J.M.M. had recanted her sexual assault assertions was not the kind of "colorable claim of actual innocence" sufficient to require an evidentiary hearing. Under K.S.A. 2017 Supp. 60-1507(f)(2)(A), a prisoner may redeem an untimely 1507 using a "colorable claim of actual innocence." "[T]he term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2017 Supp. 60-1507(f)(2)(A). This court cannot say that Dodge's mere claim in his motion that he would produce an affidavit is sufficient to warrant an evidentiary hearing on the issue. Cf. *Beauclair v. State*, 308 Kan. 284, 302-03, 419 P.3d 1180 (2018) (holding

12

that multiple affidavits from victim recanting allegations warranted an untimely K.S.A. 60-1507 evidentiary hearing but mere sworn declarations by prisoner that he was innocent did not).

*Manifest injustice:*

As stated earlier, K.S.A. 60-1507 motions not filed within one year of the termination of a prisoner's direct appeal are untimely and allowed "only to prevent a manifest injustice." K.S.A. 2017 Supp. 60-1507(f)(2). A court's inquiry into "manifest injustice" under K.S.A. 2017 Supp. 60-1507(f)(2) is limited to "determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2017 Supp. 60-1507(f)(2)(A). Actual innocence is defined as a showing that "it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2017 Supp. 60-1507(f)(2)(A).

This definition of manifest injustice is relatively new; it was added to the statute in 2016. Before then, courts applied the broader *Vontress v. State*, 299 Kan. 607, 616, 325 P.3d 1114 (2014), nonexhaustive list of factors to determine manifest injustice. *White v. State*, 308 Kan. 491, 502, 421 P.3d 718 (2018). Here, however, Dodge filed his second motion in April 2017, so this court can consider only the statutory factors: why the prisoner failed to file in time and whether the prisoner makes a colorable claim of actual innocence. As discussed earlier under *Beauclair*, Dodge does not make a sufficient colorable claim of actual innocence to salvage his untimely claim.

One question then remains:  Has Dodge sufficiently explained his delay in filing his second motion would constitute a manifest injustice? The State correctly points out in its brief that Dodge never mentions "manifest injustice" in his appellate brief.

13

Accordingly, the State argues that Dodge has waived any argument that manifest injustice justifies his untimely filing.

Dodge cited to the "manifest injustice" standard in his 2017 motion before the trial court, but he incorrectly cited to the *Vontress* definition of manifest injustice. As discussed previously, *Vontress* is inapplicable to Dodge's 2017 motion. Nevertheless, Dodge asserts that the alleged ineffective assistance of counsel by his direct appellate counsel and Rathbun, "[w]hen combined with the cumulative failures and complete abandonment of, and by, Rathbun it is clear that Dodge deserves the opportunity to plea his actual, factual, and legal innocence before the court within an evidentiary hearing."

This court is faced with several issues. Did Dodge preserve his "manifest injustice" claims for appeal by sufficiently discussing Rathbun's abandonment under his "exceptional circumstances" argument, even though he failed to use the words "manifest injustice" on appeal? If so, does the abandonment by Rathbun sufficiently explain the nearly six-year gap between our Supreme Court denying review of Dodge's first K.S.A. 60-1507 motion and the time when Dodge filed his second 1507? The answer is no.

This court declines to reach the merits of Dodge's arguments because he failed to argue on appeal that "manifest injustice" or a "colorable claim of actual innocence" excused his untimely motion. "Issues not adequately briefed are deemed waived and abandoned." *Russell*, 306 Kan. at 1089. Because Dodge failed to argue on appeal that manifest injustice would compel this court to entertain his untimely motion, Dodge's claim is untimely and, therefore, fails. See *State v. Kingsley*, 299 Kan. 896, 900, 326 P.3d 1083 (2014) ("While [the one-year time limitation of K.S.A. 1507(f)] can be extended under a manifest injustice exception, Kingsley, who has the burden of showing the exception applies, did not request such an extension and did not explain the 19-year delay. Therefore, Kingsley has failed to meet his burden and has waived any argument that he should be allowed to bring an untimely request for relief under K.S.A. 60-1507.").

14

Nevertheless, even if this court were to address Dodge's claims on their merits, his claims would fail. For example, this court would find that Dodge's claim that White was ineffective because he failed to appropriately impeach the doctor who examined J.M.M. or to introduce medical evidence of his own is meritless.

As discussed previously, Dodge had the burden to show that his K.S.A. 60-1507 motion warranted an evidentiary hearing. This requires "more than conclusory contentions," and the movant "must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record." *Holt*, 290 Kan. 491, Syl. ¶ 3. Because the trial court here summarily dismissed Dodge's claims, this court must "determine whether the motion, files, and records of the case conclusively show the movant is entitled to no relief." *Trotter*, 288 Kan. at 132.

In his 2017 motion, Dodge did not explicitly renew most of the allegations of ineffective assistance of counsel by White that he had made in his first K.S.A. 60-1507 motion. The closest Dodge came to renewing all of his original arguments was a claim that he "should be granted an evidentiary hearing so the court may hear the clear and convincing claims initially brought in the original [motion] to be presented with credible facts evident within the record, proving his innocence completely." Dodge did not, however, provide specific evidentiary support for each of the claims from his original motion in his 2017 motion. Dodge made a conclusory allegation that White provided ineffective assistance of counsel because he "failed to research, investigate, and execute a feasible trial strategy that had any merit whatsoever."

The only specific allegations of ineffective assistance of counsel by White that Dodge raised in his 2017 motion pertain to White's failure to call an expert medical witness to provide "exculpatory testimony," to "refute the representations afforded by Dr.

15

David Stanfield, [and] to further assert that J.M.M.'s genitalia were essentially comparable to that of a 'virgin.'"

De novo review of the record reveals that White elicited testimony about J.M.M.'s intact hymen, and the implications thereof, from Dr. Stanfield at trial. Dr. Stanfield testified that he examined J.M.M. about two years after the last purported instance of rape. Dr. Stanfield testified that J.M.M.'s genitals were normal and that her hymen was "intact and normal for her age." Dr. Stanfield testified that the fact that J.M.M.'s hymen was intact did not necessarily mean that she was not vaginally penetrated by Dodge. The relevant testimony is as follows:

"Q: [by White] Okay. Tough question. I suppose it's possible that the hymen would remain intact in spite of all this intercourse. Is that correct?
"A: [by Dr. Stanfield] Yes, that does happen.
"Q: Okay. Can you give me estimation as to what percentage of time that may happen, more or less consistent?
"A: Well, in the past, we have looked at issues in children or adolescents who have had multiple episodes of intercourse, whether consensual or not, and reflected on whether or not the hymen would show something, we used to call it attenuation or, the hymen itself, how thick it is. And it becomes thinner with the more intercourse episodes and such.
"And we used to try to hang our hat on, if you will, a certain amount of attenuation indicating evidence of abuse, such that, if the hymen was so thick versus conventional thickness, then you could suggest that there was a physical finding. And what's been shown more often than not is that the hymen itself is variable, just like the overall genitalia is highly variable woman to woman or, for that matter, man to man, so that you can't really hang your hat on whether or not attenuation reflects abuse or not.
"In [J.M.M.'s] case, there really wasn't any evidence of attenuation. A lot of times, you would expect to see that with repeated vaginal intercourse. But I can't necessarily say because it wasn't there that that doesn't corroborate her story.
"Q: I understand. Anything else?
"A: There are no hard and fast rules on that. . . .

16

. . . .

> "Q: Okay. In your report, you say that her story is consistent with someone who's been sexually abused but there are no physical findings.

> A: That's correct."

To succeed on a claim of ineffective assistance of counsel, Dodge "must establish (1) that counsel's performance was deficient under the totality of circumstances, and (2) that counsel's performance resulted in prejudice." *Calhoun v. State*, 56 Kan. App. 2d 185, 194, 426 P.3d 519 (2018). "Prejudice" means that there was a reasonable probability that the outcome of the trial would have been different but for counsel's deficient performance. *Sola-Morales*, 300 Kan. at 882.

Review of the record establishes that there is no evidentiary basis for Dodge's claim of ineffective assistance of counsel as it pertains to medical testimony about J.M.M.'s hymen. There is no evidentiary basis for a claim that Dodge was somehow prejudiced by the fact that White did not call a medical expert to testify that J.M.M.'s intact hymen was comparable to that of a "'virgin'" as Dodge alleges. Dr. Stanfield did testify that J.M.M.'s hymen was normal and intact; however, Dr. Stanfield also testified that this fact did not foreclose the possibility that J.M.M.'s rape allegations were true. Dr. Stanfield testified that whether a hymen is intact is not determinative of whether vaginal penetration has occurred. This court cannot say, then, that but for White's failure to call a medical expert to testify about J.M.M.'s intact hymen, the jury would have acquitted Dodge. White could have called a medical expert to testify that J.M.M.'s intact hymen therefore meant there was no chance whatsoever that she was vaginally raped as she claimed. Nonetheless, a reasonable juror could have credited Dr. Stanfield's testimony regardless and still found Dodge guilty beyond a reasonable doubt. As a result, Dodge's argument fails.

Affirmed.