NOT DESIGNATED FOR PUBLICATION

No. 119,227

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KENNETH EUGENE WILSON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Osborne District Court; PRESTON PRATT, judge. Opinion filed June 21, 2019. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., GREEN and ATCHESON, JJ.

PER CURIAM: Kenneth Eugene Wilson appeals the Osborne County District Court's summary dismissal of this habeas corpus motion under K.S.A. 60-1507 challenging the constitutional adequacy of the legal representation he received in the appeal of his first habeas corpus motion that followed his convictions in a jury trial for first-degree murder and several lesser crimes. The district court summarily denied this second motion, finding the claims to be without merit. Although Wilson has raised numerous claims, he has been unable to establish any legal prejudice. We see no material error in the district court's ruling and affirm.

1

On March 25, 2008, the home of Scott and Carol Noel was burglarized. Scott Noel was tied up and shot in the back of the head during the burglary. Wilson was charged and convicted of crimes related to this incident and also another burglary in the area. Wilson appealed his convictions, and the Kansas Supreme Court affirmed the district court. See generally *State v. Wilson* (*Wilson I*), 295 Kan. 605, 289 P.3d 1082 (2012).

Wilson timely filed a motion for habeas corpus relief under K.S.A. 60-1507 following his unsuccessful direct appeal. The district court summarily denied most of Wilson's claims but conducted an evidentiary hearing on Wilson's claim that his trial counsel had provided ineffective assistance in failing to seek suppression of evidence obtained in the execution of the search warrant on Wilson's residence. Following the hearing, the court also denied Wilson relief on the search-warrant claim.

Wilson appealed the district court's denial of his first habeas corpus motion. Based on the discussion in this court's opinion, Wilson's appellate argument was limited to trial counsel's failure to seek suppression of the evidence obtained during the execution of the search warrant. This court concluded that Wilson's claim of ineffective assistance of counsel failed because he could not establish prejudice even if counsel's failure to seek suppression of some of the evidence constituted deficient representation. See *Wilson v. State* (*Wilson II*), No. 111,962, 2015 WL 5311404, at *2-6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 304 Kan. 1023 (2016).

While the appeal in *Wilson II* was pending, Wilson filed his second motion for habeas corpus relief under K.S.A. 60-1507. Among the many issues Wilson raised, he alleged ineffective assistance of counsel in the appeal of his first habeas corpus motion. The district court summarily denied Wilson's second motion. The court concluded that many of Wilson's issues involved trial errors that were not properly raised in a habeas corpus proceeding. The court also ruled that Wilson's claims relating to ineffective assistance of his trial and appellate lawyers in the direct criminal case could have and should have been raised in his first habeas corpus motion.

Finally, the district court noted that Wilson's appeal in *Wilson II* was still pending, effectively concluding that Wilson's claims for ineffective assistance of appellate counsel in *Wilson II* were not yet ripe.

Wilson appealed to this court, which essentially affirmed the district court's reasoning. This court, however, noted that the mandate had since issued in *Wilson II* after the Kansas Supreme Court denied review. This court therefore remanded the case to the district court to consider Wilson's claims of ineffective assistance of appellate counsel in *Wilson II*. See *Wilson v. State* (*Wilson III*), No. 116,318, 2017 WL 3669061, at *2-3 (Kan. App. 2017) (unpublished opinion).

Upon remand, the district court summarily denied Wilson's claims of ineffective assistance of appellate counsel in his first habeas corpus proceeding. Wilson has appealed the district court denial, and that is what we now have in front of us.

LEGAL ANALYSIS

Wilson challenges the district court's summary denial of his claims of ineffective assistance of counsel in *Wilson III*, arguing that his allegations merited an evidentiary hearing.

*Governing Legal Principles*

A prisoner in state custody may file a motion challenging a conviction or sentence under K.S.A. 60-1507(a). The prisoner, as the moving party, bears the burden of establishing an evidentiary basis supporting his or her claims for relief to warrant an evidentiary hearing; mere conclusory contentions are insufficient. *Grossman v. State*, 300 Kan. 1058, 1062, 337 P.3d 687 (2014) ("'A movant has the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing; the movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record.'" [quoting *Sola-Morales v. State*, 300 Kan. 875, Syl. ¶ 3, 335 P.3d 1162 (2014)]). If the prisoner

3

has established a colorable evidentiary basis for his or her claims, the court must conduct an evidentiary hearing on those claims. K.S.A. 60-1507(b); *Grossman*, 300 Kan. at 1062.

The issue in this appeal is simply whether the district court properly executed the mandate of the appellate court in *Wilson III*. See *Leffel v. City of Mission Hills*, 47 Kan. App. 2d 8, 15-16, 270 P.3d 1 (2011) ("When an appellate court has remanded a case for further proceedings, a trial court must comply with the appellate court's mandate and may consider only the matters essential to implementing the mandate. In a second appeal, a determination regarding the trial court's compliance with the mandate involves questions of law over which this court has unlimited review."). In *Wilson III*, this court remanded the case to the district court "for further proceedings on the new claims in the second motion regarding the representation provided by the lawyer handling the appeal of the first motion." 2017 WL 3669061, at *3.

There is no constitutional right to the assistance of counsel in a habeas corpus proceeding under K.S.A. 2018 Supp. 60-1507. But K.S.A. 22-4506 provides a statutory right to the assistance of counsel under limited circumstances including an appeal from the denial of relief. See K.S.A. 22-4506(c). For that statutory right to have any meaning, the Kansas Supreme Court has interpreted the right to encompass the right to effective assistance of counsel, as that standard is applied in the constitutional context under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See *Robertson v. State*, 288 Kan. 217, 228-32, 201 P.3d 691 (2009).

Under the *Strickland* standard, a movant claiming ineffective assistance of counsel must establish two requirements. First, he or she must demonstrate that counsel's representation fell below an objective standard of reasonably effective legal representation. Second, he or she must establish prejudice arising from the deficient representation. *Mundy v. State*, 307 Kan. 280, 296, 408 P.3d 965 (2018). The test is the same for a challenge to the adequacy of appellate representation. See *Miller v. State*, 298 Kan. 921, 929-30, 318 P.3d 155 (2014). As to prejudice, Wilson must demonstrate that an issue omitted from his appeal or improperly argued on appeal in his first habeas corpus proceeding would have resulted in some form of relief, i.e., warranted vacating one or more of his convictions or required a new trial.

4

In this case, the district court did not hold an evidentiary hearing. Accordingly, the record does not contain an explanation from Nancy Ogle, Wilson's appellate counsel on his first habeas corpus motion, as to why she did not pursue some the claims Wilson raised in his original motion. The absence of such evidence hampers this court's ability to determine the first prong of *Strickland*. Unless no reasonable attorney would have raised a given issue on appeal, the court must assume, for purposes of this appeal only, that Ogle lacked a legitimate strategic reason for failing to raise the issues. See *Edgar v. State*, 294 Kan. 828, 843, 283 P.3d 152 (2012) (an appellate court may bypass the representational prong of the *Strickland* test by assuming deficient performance by counsel and addressing prejudice). The propriety of the district court's ruling, therefore, turns on the prejudice component of the *Strickland* standard.

*Specific Issues*

In his second habeas corpus motion, Wilson raised eight grounds on which he claimed Ogle was constitutionally ineffective in handling the appeal of his first habeas corpus motion: (1) Ogle improperly combined issues into a single issue with subdivisions; (2) Ogle failed to argue that the search warrant lacked probable cause because Wilson had been incarcerated for three weeks before the search of his residence; (3) Ogle failed to challenge trial counsel's failure to object to the admission of evidence that Wilson possessed stolen items from several uncharged burglaries; (4) Ogle failed to argue that possession of a stolen item does not demonstrate the commission of a burglary; (5) Ogle failed to challenge the sufficiency of the State's evidence supporting his convictions; (6) Ogle failed to argue that trial counsel provided deficient representation by not requesting a limiting instruction for the evidence of the uncharged burglaries; (7) Ogle failed to argue that the State's case relied on impermissible inference stacking; and (8) Ogle failed to argue the cumulative effect of his trial counsel's errors. Wilson's appointed counsel raises those claims in this appeal.

Several of Wilson's allegations raise ostensible trial errors that are not properly framed as constitutionally inadequate legal representation appropriately considered under K.S.A. 60-1507. See Kansas Supreme Court Rule 183(c)(3) (2019 Kan. S. Ct. R. 228); *Calhoun v. State*, 56 Kan.

5

App. 2d 185, 193-94, 426 P.3d 519 (2018). Nevertheless, pro se pleadings may be construed liberally to give effect to the substance rather than the form of their arguments. See *State v. Kelly*, 291 Kan. 563, 565, 244 P.3d 639 (2010). Giving Wilson every benefit, we interpret his claims of trial error to be constitutionalized as Ogle's inadequate representation in failing to similarly constitutionalize and pursue ineffective assistance claims against his trial counsel on those points.

### 1. Combined Issues.

Wilson contends that Ogle "sabotaged the defense" by combining Wilson's various allegations of ineffective assistance of counsel into a single issue with subparts. To the extent Ogle's compression of Wilson's allegations omitted some claim from review, the reorganization of Wilson's arguments might have prejudiced him. But, in the context of this argument, Wilson has not identified any claims that were neglected through Ogle's reorganization on appeal. To the extent Ogle presented all of Wilson's arguments in a different organization, Wilson cannot establish prejudice.

### 2. Additional Argument Regarding Search Warrant.

Wilson next contends that Ogle provided deficient representation in failing to challenge the search warrant on the ground that Wilson had been incarcerated for three weeks on an unrelated parole violation before law enforcement officers conducted the search. Wilson's argument in his appellate brief on this issue is nothing more than a restatement of the claim with a conclusion that the district court should have held an evidentiary hearing on the claim. This minimal briefing fairly might be construed as insufficient to outline a colorable claim for relief. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

But we look more closely at Wilson's argument. Ogle did challenge the admission of evidence on the basis that several items seized during the search were not listed with particularity in the search warrant. Ogle did not challenge the search warrant itself. See *Wilson II*, 2015 WL 5311404, at *2. But, in his first habeas corpus motion, Wilson did not raise the issue he contends

6

Ogle should have pursued on appeal. Wilson claimed only that the search warrant failed to list the items to be seized with sufficient particularity and that the officers grossly exceeded the scope of the warrant in seizing items not listed in the warrant. Ogle did not provide objectively unreasonable representation in choosing to focus on an issue Wilson had actually raised in his motion for habeas corpus relief rather than one he did not. Furthermore, even if Ogle's representation in this respect were somehow deficient, Wilson cannot demonstrate a likelihood of the claim's success on appeal because the issue was not properly preserved for appellate review and the appellate court was not obliged to consider the issue. See *Robertson*, 288 Kan. at 227 ("This court has held that a constitutional challenge to an attorney's performance must first be raised in the district court, either via a collateral attack or on remand during direct appeal, for determination of the issue.").

But, even if this court considers the merits of Wilson's search-warrant issue, he cannot establish prejudice in Ogle's failure to present the issue in his first habeas corpus proceeding. Wilson raises two arguments in opposition to the search warrant. First, he contends that, since he was in jail before the search warrant was executed, the State lacked probable cause. The reasoning of this argument is wholly unpersuasive. Wilson's incarceration at the time the search warrant was obtained and executed has no particular relevance to the proper grounds for issuing a search warrant. If the State presented a magistrate judge with probable cause to believe that evidence or instrumentalities of the burglaries would be found in Wilson's residence, Wilson's whereabouts when the warrant was executed has nothing to do with the legal sufficiency of the warrant or its execution. See K.S.A. 2018 Supp. 22-2502 (establishing requirements for search warrant). Furthermore, the fact that Wilson was ultimately not charged for the burglaries related to some of the evidence found in his residence does not render the search invalid.

Second, Wilson argues that the search warrant had no nexus to the crime for which he was incarcerated. Again, this argument lacks merit. Wilson did not need to be arrested on the burglary charges to establish a factual basis to search his residence for evidence of the burglaries. So long as the affidavit in support of the search warrant demonstrated probable cause to believe evidence or fruits of those burglaries would be discovered in his residence, a judge properly could issue the warrant. Whether Wilson was in jail or the reasons for his incarceration would be

7

irrelevant. See K.S.A. 2018 Supp. 22-2502(a) (search warrant shall issue upon identification of crime and probable cause to believe evidence or fruits of that crime may be found at place identified in warrant).

If Ogle had raised either of those arguments in Wilson's first habeas corpus proceeding, they would not have provided a basis for relief. Ogle's omission of the issues, therefore, could not have legally prejudiced Wilson.

*3. Lack of Objection to Admission of Evidence Related to Uncharged Burglaries.*

Wilson contends that Ogle provided deficient representation in not raising his trial lawyer's failure to object to the State's assertion that Wilson was in possession of stolen items related to uncharged burglaries and in failing to object to the admission of evidence of the stolen items. Again, Wilson's argument has two components. First, he argues that the State's representation that he possessed items stolen in burglaries was unfounded. It is undisputed that victims of the burglaries identified various items found during the search of Wilson's residence as their stolen property. Although Wilson was incarcerated at the time of the search, the items remained in his constructive possession. See *State v. Washington*, 244 Kan. 652, 654, 772 P.2d 768 (1989) ("The possession of [contraband] may be immediate and exclusive, jointly held with another, or constructive as where the [contraband] is kept by the accused in a place to which he has some measure of access and right of control.").

Second, Wilson contends that Ogle should have argued against the admission of the evidence related to the uncharged burglaries. Ogle represented Wilson in a collateral proceeding at which trial errors are not properly considered. If Ogle had raised the issue in the context of ineffective assistance of the trial lawyer, the issue would have not prevailed. Trial counsel did object to the admission of the evidence of the uncharged burglaries, and the issue was considered by the Kansas Supreme Court in Wilson's direct criminal appeal. See *Wilson I*, 295 Kan. at 614, 617-21. The Kansas Supreme Court concluded that the evidence was properly admitted to establish identity, a hotly contested issue in the case. 295 Kan. at 621.

Accordingly, had Ogle raised these issues in Wilson's first habeas corpus proceeding, they would not have entitled Wilson to relief. He, therefore, cannot establish legal prejudice flowing from Ogle's failure to raise the issues.

*4. Failure to Argue that Possession of a Stolen Item does not Constitute Burglary.*

In his second motion for habeas corpus relief, Wilson asserted that Ogle should have argued that his possession of stolen property did not suggest he committed a crime. At its core, this argument challenges the sufficiency of the State's evidence based upon the circumstantial evidence placing Wilson at the scene of several crimes. It is not an argument appropriately made in a habeas corpus motion under K.S.A. 60-1507. See *Calhoun*, 56 Kan. App. 2d at 193-94. If Wilson's argument were construed as a challenge to Ogle's performance for failing to claim that Wilson's trial lawyer was ineffective in failing to make such an argument, the point is muddled given the record on appeal.

In closing argument, Wilson's trial lawyer discussed the State's evidence, questioning whether the evidence left room for reasonable doubt. In that context, the trial lawyer questioned why Wilson had possession of only costume jewelry and not the valuable pieces taken from various homes during the uncharged burglaries. The lawyer argued, "It is more likely that those pieces of costume jewelry were gotten from some other source." In the same context, trial counsel argued that Wilson's possession of objects similar to property taken in the various burglaries did not prove that they were the actual objects taken during the burglaries. Although trading on inferences, the lawyer presented the argument Wilson wanted him to make more explicitly. Therefore, if Ogle had argued that trial lawyer provided deficient representation for failing to make the argument, this court fairly would have concluded the lawyer did indeed make the argument.

Even if this court were to conclude otherwise, Wilson still can demonstrate no prejudice. Wilson testified at trial, and his lawyer essentially permitted Wilson to provide his own narrative. Wilson did not provide any explanation for his possession of the stolen property. While he had no burden to disprove the State's case, he offered the jury no version of the facts to counter the

9

State's explanation for his possession of that property. Had the trial lawyer argued explicitly that Wilson's possession of stolen property did not establish the commission of the uncharged burglaries, the argument had no reasonable chance to persuade the jurors because it lacked any support in the evidence and defied the common sense conclusion drawn from the circumstantial evidence actually admitted.

As summarized in the Kansas Supreme Court's discussion of the evidence of the uncharged burglaries, Wilson's possession of the stolen property was not the only circumstance tying him to the murder of Scott Noel and to the burglaries.

"But Wilson ignores numerous similar factual circumstances that raise a reasonable inference that Wilson committed all nine offenses. For instance, the rural residences were all relatively isolated with no near or adjacent neighbors; the residences were all near a highway; the residences were within a limited area in north-central Kansas and south-central Nebraska; and the residences were all unoccupied at the time of the burglary.

"Moreover, the burglaries all were committed within the same general time frame as the charged burglaries. Four of the burglaries occurred between March 12, 2008, and March 14, 2008 (Tracy Noel, Blakely, Hagelgantz, and Andrews homes). Another four burglaries occurred between March 24, 2008, and March 25, 2008 (Scott and Carol Noel, Fink, Pope, and Livgren homes). The remaining burglary occurred sometime in March 2008 while the owners were out of state (Switzer home). Significantly, the evidence established that Wilson was away from his home in Salina on trips around the time of the burglaries.

"Other similarities exist between some of the uncharged burglaries and the charged burglaries. For instance, at the Scott Noel and Blakely homes, previously unloaded guns were removed from their customary locations, loaded, and left out in an obvious location. Also, officers found cigarette butts at the Noel, Blakely, and Livgren homes; and Loa Hagelgantz reported smelling cigarette smoke immediately after Wilson left her home. The evidence showed that the Noels, the Blakelys, and the Hagelgantzes do not smoke while Wilson does smoke. DNA profiles from the cigarette butts found at the Noel and Livgren homes matched Wilson's DNA profile. Further, Hagelgantz identified Wilson in a photo lineup as the man she saw and spoke to outside her home the

10

morning of the burglary. And finally, while Wilson recognizes that items of value were taken during all robberies [*sic*]; he fails to point out that items taken during the burglaries of the Fink, Tracy Noel, Blakely, Switzer, Andrews, Pope, and Livgren homes later were found in Wilson's home and RV." *Wilson I*, 295 Kan. at 619.

Based upon the circumstantial evidence presented at trial, had Wilson's trial lawyer directly argued that possession of stolen items did not prove that Wilson committed the charged and uncharged burglaries (as Wilson now wants), the argument would have been plainly hollow and, as a result, likely would have alienated the jurors and undermined their willingness to listen objectively to other defense points. Accordingly, Ogle's failure to challenge the trial lawyer's representation of Wilson for that reason did not abandon an otherwise effective collateral attack on the convictions.

### 5. *Failure to Challenge Sufficiency of the Evidence*.

Wilson's fifth allegation of ineffective assistance of counsel against Ogle contends that Ogle failed to challenge the sufficiency of the evidence against Wilson. Again, Wilson's argument on appeal is little more than restating the claim, which is not a legally sufficient presentation of the point. See *Arnett*, 307 Kan. at 650. In addition, a challenge to the sufficiency of the evidence is a trial error that should have been brought in Wilson's direct criminal appeal, not in Wilson's first habeas corpus proceeding. See *Calhoun*, 56 Kan. App. 2d at 193-94. Even if Wilson surmounted those valid procedural barriers, his claim fails because he cannot establish prejudice.

To convict a person of a crime, the State is required to prove every element of the crime beyond a reasonable doubt. But, when a criminal defendant challenges the sufficiency of the evidence supporting a conviction, an appellate court reviews the evidence in a light most favorable to the State as the prevailing party and considers whether a rational fact-finder could have found that the State carried that burden. In

reviewing a sufficiency challenge, an appellate court does not weigh evidence, resolve evidentiary conflicts, or make credibility determinations. See *State v. Parker*, 309 Kan. 1, 14, 430 P.3d 975 (2018).

In this case, the death of Scott Noel during the commission of a burglary was not seriously contested. The evidence presented at trial unquestionably established that Scott Noel was murdered. Carol Noel, his wife, found him lying on the floor with his hands tied behind his back and a contact gunshot wound to the back of his head. He had been severely beaten. Items in the house were out of order, and $50 in cash that Carol had left on the dining room table for Scott was missing. The only issue at trial pertained to Wilson's participation in the crimes. Similarly, there was little question that the home of Elinor Fink had been burglarized the same day that Noel was killed. Again, the issue at trial focused on the identity of the perpetrator or perpetrators.

The State established Wilson's involvement in the crimes circumstantially. Two witnesses testified they observed an unknown car in the vicinity of the Noel residence on the day of the murder. One witness saw the unknown car leaving the Noel lot. The other witness saw the unknown car traveling toward the Noel property. The description of the unknown car the witnesses provided matched the description of Wilson's car. A cigarette butt found in the sunroom of the Noel residence and another found outside one of the other burglaries were tested for DNA. A DNA profile obtained from the butts matched Wilson's DNA profile. Further investigation led law enforcement to discover a rash of burglaries of rural residences in north-central Kansas and south-central Nebraska during March 2008. One of the burglary victims spoke to a man driving a gray car as he left her property. The woman was unable to positively identify the man in a photo lineup, but she selected a picture of Kenneth Wilson as the person most like the person she saw. Wilson's wife told law enforcement that Wilson went on a couple of trips during March with a friend, Delbert McBroom, and was gone from home for several days each time. Some of

12

the stolen property was discovered in a search of Wilson's residence and in the recreational vehicle where McBroom was living in Wilson's backyard.

The State did not present any direct evidence that Wilson murdered Noel or committed any of the burglaries, but the circumstantial evidence of Wilson's involvement is substantial. Wilson's DNA was found on cigarette butts at two different crime scenes. A car resembling Wilson's car was seen leaving the Noel farm on the date of the murder. Items taken from various burglaries were found in Wilson's possession. Together, the evidence is sufficient to lead a reasonable person to conclude that Wilson committed the murder or was an accessory to it. See *State v. Lowery*, 308 Kan. 1183, 1236, 427 P.3d 865 (2018) (stating that circumstantial evidence has no less probative value than direct evidence and may entirely support a conviction of the gravest offenses). Consequently, even if Wilson's appellate counsel in his direct appeal had raised the sufficiency of the evidence (or Wilson's appellate counsel in his first habeas corpus proceeding had challenged the efficacy of Wilson's lawyer handling the direct appeal), the issue would not have led to a favorable outcome. Wilson cannot establish prejudice.

6. *Lack of Limiting Instruction.*

Wilson also challenged Ogle's representation in failing to argue that Wilson's trial lawyer was ineffective in failing to request a limiting instruction regarding the admission of the uncharged burglaries as K.S.A. 60-455 evidence. This claim of ineffective assistance of counsel also fails.

At Wilson's criminal trial, the district court provided a general limiting instruction. In Wilson's direct appeal, the Kansas Supreme Court found this instruction sufficient to guide the jury in considering the K.S.A. 60-455 evidence. See *Wilson I*, 295 Kan. at 621. If Ogle had raised the issue of the limiting instruction in Wilson's first habeas corpus

13

proceeding, the issue would have failed based on the court's analysis of the point in *Wilson I*. Wilson cannot demonstrate prejudice in Ogle's failure to raise the issue.

*7. Impermissible Inference Stacking.*

Wilson next contends that Ogle provided deficient representation by failing to argue that the State's case was supported by impermissible inference stacking. Given the way that Wilson frames the issue in his appellate brief, it is indistinguishable from his argument regarding the sufficiency of the evidence.

Nevertheless, Wilson correctly notes that a conviction may not be premised upon stacked inferences. See *State v. Banks*, 306 Kan. 854, 859, 397 P.3d 1195 (2017). Wilson, however, confuses stacked inferences with evidence of multiple circumstances that establish an essential element of a crime. See 306 Kan. at 859 ("[T]he prosecution is not required to use the same circumstance for each and every element of the crime or for every fact it wants the jury to infer."). Wilson's DNA on a cigarette butt at two crime scenes is a circumstance that permits an inference that Wilson visited each of those crime scenes. The observation of a vehicle matching Wilson's vehicle leaving the Noel farm on the date of the murder creates a circumstance that Wilson was at the Noel farm on that date. Wilson was seen at the site of the other charged burglary. The other burglaries, which required an inference that Wilson committed the burglaries from the items found at his property, also required an inference that, because he committed some of the burglaries, he committed all of the burglaries. But those burglaries were not charged. In examining the admission of evidence of these uncharged burglaries, the Kansas Supreme Court found the burglaries sufficiently similar in character to permit an inference of identity. *Wilson I*, 295 Kan. at 619-20.

> "[E]vidence of the underlying facts showing the manner in which the Tracy Noel,
> Blakely, Switzer, Andrews, Pope, and Livgren burglaries were committed—particularly

14

evidence of the locations of the crimes and general time frame of the crimes, and evidence that stolen items from these homes were recovered in Wilson's home or RV—raises a reasonable inference that the same person—Wilson—committed those burglaries and the Fink burglary. Evidence of the underlying facts showing the manner in which the Hagelgantz burglary was committed—particularly evidence surrounding the smell of cigarette smoke, Hagelgantz' identification of Wilson as outside her home, and Wilson's DNA profile on the cigarette butt found at the Noels' home—raises a reasonable inference that the same person—Wilson—committed the Hagelgantz burglary and the aggravated burglary of the Noels' home." *Wilson I*, 295 Kan. at 619-20.

The argument that Wilson raises regarding stacked inferences seeks to revisit this ruling by the Kansas Supreme Court. Any attempt to relitigate the decision in *Wilson I* is itself procedurally barred. See *Venters v. Sellers*, 293 Kan. 87, 98, 261 P.3d 538 (2011). While Wilson's convictions were supported by circumstantial evidence, the State did not rely on impermissible inference stacking to obtain the convictions. Wilson cannot demonstrate prejudice arising from Ogle's failure to raise this issue in his first habeas corpus proceeding.

### 8. Cumulative Evidence.

Wilson's final issue is less than clear. He complains that Ogle failed to raise cumulative trial error in his first habeas corpus proceeding. In his first habeas corpus motion, Wilson did indeed argue cumulative trial error. Trial errors may not properly be raised in a habeas corpus proceeding. *Calhoun*, 56 Kan. App. 2d at 193-94. More importantly, cumulative trial error requires an appellant to demonstrate multiple mistakes that individually would not require reversal but collectively undermined the defendant's ability to obtain a fair trial. See *State v. King*, 308 Kan. 16, 38, 417 P.3d 1073 (2018). Wilson must first establish that some trial error occurred. He was unsuccessful in establishing such error in his direct appeal to the Kansas Supreme Court. See *Wilson I*, 295 Kan. at 625.

15

In his second habeas corpus motion, however, Wilson appears to contend that Ogle should have argued the cumulative impact of the ineffective assistance of the lawyers representing him in his direct criminal case in the district court and on appeal. This argument appears to be a repetition of each of the allegations of ineffective assistance of counsel against Ogle, which Wilson contends cumulatively undermined his first habeas corpus proceeding. Even this argument does not provide a basis for relief. First, Wilson did not make a cumulative error argument in his first habeas corpus motion as to the lawyers in the direct criminal case. Since he did not make the argument as it is now presented, Ogle cannot be deemed to have provided deficient representation for failing to present an issue that was not properly preserved. Or, alternatively, Wilson cannot demonstrate a reasonable probability that Ogle's presentation of the issue would have produced a different result in his first habeas corpus proceeding. See *Robertson*, 288 Kan. at 227.  Second, Wilson has failed to establish that any claims Ogle failed to pursue in his first habeas corpus proceeding possessed legal merit. Therefore, there is no cumulatively deficient representation to consider.

*Conclusion*

None of the underlying claims that Wilson complains Ogle should have raised in the appeal of his first habeas corpus motion have substantive merit under the circumstances of this case. Whether Ogle deliberately opted to focus on more meritorious issues or simply neglected to raise the issues is immaterial because Wilson cannot establish prejudice arising from any ostensible failing he has identified in Ogle's representation. As a matter of law, Wilson's claims of ineffective assistance of counsel in the appeal of his first habeas corpus motion therefore lack merit. The district court properly resolved the motion against Wilson without first holding an evidentiary hearing.

Affirmed.